PEOPLE v. BEVERLY

| 108 | 509 |
| 108 | 651 |
| 108 | 509 |
| f122 | 389 |

1. HOMICIDE—INSTRUCTIONS TO JURY.

Where the evidence in a homicide case shows that the crime committed, if any, was murder, it is unnecessary for the court to charge the jury upon the subject of manslaughter.

2. EVIDENCE—DYING DECLARATIONS.

It is no objection to the admission in evidence of a dying declaration that the "exigencies of the case" do not require it.

3. SAME.

The admissibility of a dying declaration is not dependent upon its having been taken immediately after the injury.

4. SAME.

It is not essential to the admissibility of a dying declaration that notice of an intention to take the same should have been given to the accused.

5. SAME.

A dying declaration is not within the provision of the statute requiring the names of witnesses to be indorsed upon the information.

6. SAME.

The action of the trial court in admitting in evidence a dying declaration will not be reversed, on the ground that the deceased was under the influence of opiates at the time it was taken, and was not certain that she would die, where there was testimony fairly tending to show that the condition of the deceased was such as to render the statement admissible, and all of the circumstances were placed before the jury for their consideration.

7. SAME.

Dying declarations may include statements as to the cause and circumstances of the homicide.

8. CRIMINAL LAW—INSANITY—INSTRUCTIONS.

A request for an instruction that, if the respondent is insane, he is irresponsible, and should be acquitted, is properly refused, his responsibility for the act charged being a question for the jury.

9. SAME—HOMICIDE—EVIDENCE.

Upon a trial for murder, evidence that the deceased was reputed to be a woman of loose character is inadmissible in support of the theory that the respondent was rendered insane by reason of a venereal disease communicated to him by the deceased.

10. SAME—NEW TRIAL—MISCONDUCT OF JURY.

A new trial will not be granted in a criminal case on the ground that the officer in charge of the jury was assisted by another officer, who was not sworn, where it does not appear that respondent was prejudiced, and where any presumption of injury is overcome by affidavits.

11. SAME.

A conviction will not be reversed because the officer who attended the jury was a witness for the people, or because the jury were permitted to see one of the respondent's witnesses confined in jail, in the absence of a showing of prejudice.

Error to Monroe; Kinne, J. Submitted January 31, 1896. Decided March 3, 1896.

Clarence Beverly was convicted of murder in the second degree, and sentenced to imprisonment in the state prison at Jackson for 25 years. Affirmed.

*John O. Zabel* and *Ira G. Humphrey*, for appellant.

*H. A. Lockwood*, Prosecuting Attorney, for the people.

HOOKER, J. The defendant killed his wife by repeated shooting, under circumstances which clearly indicated murder, unless the defense of irresponsibility can be maintained. He was convicted of murder in the second degree.

His counsel allege error upon the charge of the court, in that it did not sufficiently explain the offense of manslaughter, and it is claimed that it was so carelessly worded that it may have led the jury to infer that he could not properly be convicted of that offense. From our examination of the evidence (which is all incorporated

in the bill of exceptions), we think that the defendant was guilty of murder, if any crime, and that the court might properly have said so to the jury. It therefore becomes unnecessary to discuss the points raised upon the subject of manslaughter.

Upon the trial, a dying declaration, made by the deceased, was read in evidence. Several reasons are alleged why this should have been excluded, viz. :

1. Because the exigencies of the case did not require it.

2. Because it was taken some days after the shooting occurred, and defendant had no notice.

3. Because counsel for defendant were not permitted to examine such statement until it was offered in evidence, and the intention to use it upon the trial was not indorsed upon the information, with the names of witnesses for the prosecution.

4. Because the deceased was under the influence of opiates at the time it was taken, and was not certain that she would die.

5. Because a large portion of her statement was about matters remote as to time and place, and not a part of the *res gestœ*.

We do not find any authority supporting several of these claims, and see no occasion for discussing them at length. We know of no rule that makes the admissibility of a dying declaration depend upon the "exigencies of the case," or the fact that it was taken immediately after the injury; and we recall no case which holds that its admissibility depends upon notice of the intended taking of such statement to the defendant or his counsel; and we think it is not within the provision of the statute requiring the names of witnesses to be indorsed upon the information.

The condition of the witness at the time the statement was made was before the court and jury, both as to the influence of opiates and her belief in impending death. The judge was warranted in admitting the statement, and the jury were at liberty to give it such credence as it seemed worthy of. In the main it was in accord with undisputed facts, and as to those could not have injured the defendant.

This statement alleged that the defendant had repeatedly threatened to kill his wife and others if she should leave him, but the court struck out that portion applying to others. The brief does not point out the objectionable matters, or show how the defendant was injured by them. But we suppose it was these threats that counsel objected to. Dying declarations are admitted in homicide cases upon the theory that the belief in impending death is equivalent to the sanction of an oath. They extend to statements of the cause and circumstances of the homicide. 6 Am. & Eng. Enc. Law, 105; *People* v. *Olmstead*, 30 Mich. 435, and cases cited; 1 Rosc. Cr. Ev. p. 33; 1 Greenl. Ev. § 159. In this case the statement showed that the defendant repeatedly threatened to shoot his wife if she should leave him, or refuse to cohabit with him. The testimony showed that she did leave him, and that, being unable to induce her to return, he shot her. There is an obvious and intimate connection between these threats and the act. They throw light upon the cause of the shooting, and, together with the circumstances, were properly included in the statement.

Error is assigned upon the charge and the refusal to give defendant's requests upon the subject of insanity, which was the defense interposed. It seems necessary to reiterate what has been repeatedly said,—that a trial court is not required to take his charge from the pen of counsel. If the subject is fairly covered, it is sufficient. Insanity is not only a broad, but a very flexible, term, and men differ in their conception of it. A jury should never be told, in broad terms, that if a man is insane he is irresponsible, and should be acquitted of crime. It is for the jury to determine whether he is *non compos mentis*, or has not control of his mind or will, by reason of disease, and with reference to the act charged. *Roberts* v. *People*, 19 Mich. 401; *People* v. *Finley*, 38 Mich. 482. We think that the defendant has no cause for objecting to the charge upon this subject.

Counsel allege error upon the refusal of the court to

permit them to show that the deceased was reputed to be a woman of loose character. The excuse for this attempt was that they had offered some testimony that syphilis sometimes induced insanity, and that there was evidence that the defendant had that disease. Just how it would be more likely to render the defendant insane if communicated from his wife is not apparent; but, at all events, the testimony was hearsay, and was properly excluded. It is unfortunate that, after a defendant has taken the life of his wife, it should be thought necessary to blast her reputation, and hurt the feelings of her friends, and children, if she had any, when no possible legitimate benefit was to be gained thereby. The defense of insanity was very weak, and it is creditable to the jury that they disregarded it.

During the trial the jury was in charge of a sworn officer, as required by Act No. 176, Pub. Acts 1893. It is shown that when the jurors were upon the streets such officer attended them, and was assisted by another officer, not sworn; and it appears that such officer communicated with jurors to the extent of saying, "Good morning," and to supply their wants. The better practice would have been to administer the oath to both officers, but it does not appear that the defendant was prejudiced, and we think any presumption of injury is overcome by the affidavits filed by the prosecution. The fact that one of the officers was a witness in the case does not necessarily affect the case (*People* v. *Coughlin*, 65 Mich. 704); nor does the fact that jury saw one of defendant's witnesses in the jail.

This record discloses a most atrocious murder, and we only wonder that the jury consented to reduce the offense to second degree, as the proof of premeditation was ample.

The judgment will be affirmed.

The other Justices concurred.