PEOPLE *v.* DE MEAUX.

1. CRIMINAL LAW—INFORMATION—PLEADING—RESISTING OFFICER.
   Under Act No. 207, Pub. Acts 1889, as amended (3 Comp. Laws 1915, § 14994), relating to the offense of resisting an officer, the complaint or information need not set up the charge in detail; a general statement of the nature and validity of the warrant and date of service, place of occurrence and source of the process sufficiently complied with the requirements.

2. SAME—INFORMATION—PROCESS, SERVICE OF.
   Nor was it essential to the validity of such information to set out *in haec verba* the process under which the officer was acting if sufficiently described so as to inform the accused what charge he must meet.

3. CONSTITUTIONAL LAW—JUSTICES OF THE PEACE—CITIES—CHARTER OF CITY OF LANSING.
   Provisions of the charter of the city of Lansing authorizing the justice of the peace of Lansing township to act as justice in case the city official becomes disabled, disqualified, or absent, were not invalid because in conflict with the home rule provisions of the Constitution, or for the reason that they impose upon the citizens an officer that they are entitled, in accord with the principle of local self government, to select.

4. SAME—JUSTICES OF THE PEACE—JURISDICTION.
   As the officer already has the power to act as justice in his own jurisdiction, the power of the legislature to give authority to fill the temporary vacancy cannot be questioned: it had merely the effect of enlarging the jurisdiction of the official that was called in as a substitute.

5. SAME—DELEGATION OF FUNCTIONS.
   Hence, there is no force to the contention that as a constitutional objection a justice cannot delegate his powers to another and the legislature may not authorize him so to do, taking into consideration the fact that the local act did not confer authority upon the justice to delegate

his powers to one who was not already vested with juridical functions.

6. SAME—POLICE—ARREST—PROCESS—SERVICE.

Where the complaint under which respondent was to have been arrested was placed in the hands of a police officer for service and under the municipal charter it was provided that if the complaint was made by a city officer or private citizen the justice should deliver all process, civil or criminal, to a constable, who should serve it, a policeman, by further provisions of the said local act being empowered to make the arrest (section 213, Act No. 405, Local Acts 1893, as amended), was lawfully acting under the same, in trying to take the respondent into custody. The two sections should be construed as to be both operative.

7. CRIMINAL LAW—PROCESS—JUSTICE.

The warrant was not invalid because it contained a recital that whereas E. had made a complaint in writing and on oath to me, H., a justice of the peace, etc., when F., a township justice, was sitting in the absence of the regular official, H., because the recital is no essential part of the process, and, in any event, amounted to no more than a harmless irregularity: it appearing, also, in the warrant that the complaint was made on oath and by and before whom.

8. SAME—ABSENCE—SUBSTITUTE—COURTS.

Where the justice had been absent for about two months on account of illness and, in compliance with a request made by him before he left town, the township justice had been acting as a substitute, and, though the regular justice had returned, he had not gone to his office, and the time was not an unreasonable one to allow him to return and commence work, the process issued by the acting justice was valid.

9. SAME—EVIDENCE—CHARGE.

While the court erred in informing the jury that it was admitted that the warrant was sufficient, the fact being disputed, the question of the validity of the warrant was for the court, not the jury, and no prejudice could have resulted.

10. SAME—LESSER OFFENSE—APPEAL AND ERROR.

The court did not commit error in failing to charge that

respondent might have been guilty of simple assault, a lesser offense than that of resisting an officer, where the respondent was either guilty of resisting the police, in his own home, or not chargeable with any offense, on the ground that the warrant was bad.

11. SAME—JURY TRIAL—VERDICT—COMPELLING JURY TO AGREE.

The verdict reached by the jury should be the judgment of each individual juror and the jurors should be so instructed. Any attempt to drive them into an agreement which is not freely reached tends to pervert justice. And although the trial judge may, in his discretion, keep the jury out until he is satisfied no agreement can be reached, it is not proper to keep a jury confined beyond a reasonable period for reaching a verdict.

12. SAME—TRIAL—INSTRUCTIONS.

Accordingly, the trial judge committed error after the jury had returned into court for additional instructions, in saying to them that it was their sworn duty to arrive at a verdict and in order to do so they must discuss the matter impartially and fairly, without prejudice, they must do what they could to arrive at a verdict, that was what they were there for. And the giving of such instruction, that was prejudicial to respondent, must be held to have resulted in a miscarriage of justice.

Error to Ingham; Collingwood, J. Submitted October 13, 1916. (Docket No. 169.) Decided December 21, 1916.

Theodore De Meaux was convicted of resisting an officer. Reversed.

*Grant Fellows*, Attorney General, and *William C. Brown*, Prosecuting Attorney, for the people.

*Cyrenius P. Black* and *Allan R. Black* and *Warner & Raudabaugh*, for respondent.

KUHN, J. The respondent was convicted under section 11327, 3 Comp. Laws (3 Comp. Laws 1915, § 14994), of having resisted an officer while attempting

to serve process. Omitting its formal parts, the information filed was as follows:

"That heretofore, to wit, on the 30th day of October, A. D. 1915, at the city of Lansing and in the county aforesaid, one Theodore De Meaux, late of the city of Lansing, in the county aforesaid, did then and there knowingly obstruct, resist, oppose and assault one Le Roy A. Potter, a duly authorized and appointed police officer of the city of Lansing, in said county of Ingham, known to be such by the said Theodore De Meaux in his the said Le Roy A. Potter's serving and attempting to serve a warrant for the arrest of said Theodore De Meaux, in that he, the said Theodore De Meaux, did point a revolver at the person of said Le Roy A. Potter, and did drive and force the said Le Roy A. Potter from his presence and otherwise did knowingly and wilfully obstruct, resist, oppose and assault said Le Roy A. Potter, he, the said Theodore De Meaux, being charged in said warrant with having unlawfully furnished liquor, contrary to the provisions of a certain resolution adopted by the board of supervisors of the said county of Ingham, on the 13th day of April, A. D. 1914; in pursuance of the provisions of Act No. 207 of the Public Acts of the State of Michigan for the year A. D. 1889, as amended, said warrant being issued by lawful authority of one Charles G. Force, a justice of the peace of the township of Lansing, in said county, acting for Charles F. Haight, justice of the peace of the city of Lansing, having proper jurisdiction to issue said warrant and the said Le Roy A. Potter being then and there as such police officer lawfully engaged in the serving of said warrant, contrary to the form of the statute in such case made and provided and against the peace and dignity of the people of the State of Michigan."

The warrant which it is claimed was in the hands of the officer when resisted was issued upon a complaint taken before one Charles G. Force, a justice of the peace of the township of Lansing, acting for Charles F. Haight, justice of the peace of the city of Lansing.

Before pleading to the information counsel for respondent made a motion to quash the information and discharge the respondent for various reasons, which motion was denied. The questions involved have been raised by assignments of error, which will be herein discussed.

It is the first contention of respondent's counsel that the information is insufficient in that it does not adequately set up the offense with which the respondent was charged in the warrant, action under which he is alleged to have resisted. It is claimed that the process under authority of which the officer was acting when resisted should have been fully set up in the information, and that what has been set up is merely the affirmance of a conclusion. Our attention has not been directed to any case decided by this court where the question was involved of how fully the process in a charge of this kind should be set up in the information. The cases of *People* v. *Hamilton*, 71 Mich. 340 (38 N. W. 921), and *People* v. *Hubbard*, 141 Mich. 96 (104 N. W. 386), are relied upon by counsel for appellant. In both of these cases the defects in the information pointed out by the court related to the failure to describe the conduct of the officer and the acts of resistance and make no mention of the matter of setting up the process under which the officer was acting when resisted. In the *Hubbard Case*, Mr. Justice McALVAY, in writing the opinion, said:

"No cases are found by us or called to our attention in prosecutions for resisting an officer in the execution of process lawfully issued, where it has been held not necessary to set forth specifically in the information the nature of the process and the doings of the officer under it at the time of the resistance."

We are of the opinion that it was not necessary to set out in the information *in haec verba* the process

under which the officer was acting as tne nature of the process was sufficiently described in the information to advise the respondent what he was called upon to answer. See *State* v. *Roberts*, 52 N. H. 492; *State* v. *Cassady*, 52 N. H. 500; *State* v. *Perkins*, 43 La. Ann. 186 (8 South. 439); *Slicker* v. *State*, 13 Ark. 397; *McQuoid* v. *People*, 8 Ill. (3 Gilman) 76.

It is next contended that the statute under which the justice of the peace was acting at the time the warrant was issued is unconstitutional. The old charter of the city of Lansing in its provisions relating to a court of the justice of the peace, being a portion of Act No. 405 of the Local Acts of 1893, as amended by Act No. 416, Local Acts 1897, and by Act No. 378, Local Acts 1903, provides:

"In case of the absence, disability or disqualification of the said justice, a justice of the peace of the township of Lansing in said county shall be qualified to act in the place of and for said justice in the performance of any of the duties devolved upon him under this act, and shall, when called upon by said justice or by the circuit judge so act."

The same provision is also contained in the present charter. It is broadly contended that the legislative designation of a justice of the township of Lansing to act as justice in another municipality is in violation of our Constitution as contravening the important principle of local self-government that no person elected by another constituency can be imposed upon the citizens of Lansing by the legislature, as such would deprive them of their constitutional right to elect their own judicial officer. The office of justice of the peace is a part of the judicial system of this State, and in the exercise of the important functions of this office the persons filling it cannot be said to be performing duties local in character, but must rather be said to be performing duties in behalf of the entire State.

Chief Justice CAMPBELL, in the case of *People* v. *Goodwin*, 22 Mich. 496, at page 499, said:

"The judicial department of every civilized government is one of the three co-ordinate parts of the sovereignty which acts for the State in expounding the laws and enactments in which the other departments have acted for the people as legislators and the approvers of legislation. It represents only the law by which the people have, by their proper agents, bound themselves. It cannot, therefore, in any of its duties, be said to serve any county, or circuit, or district. Its services are all performed on behalf of the State, as the sovereignty from which all the law emanates. We held in the case of *People, ex rel. Schmittdiel,* v. *Board of Auditors of Wayne County,* 13 Mich. 233, that services in the administration of justice were in no proper sense local services."

Again, in *Faulks* v. *People,* 39 Mich. 200, at page 202 (33 Am. Rep. 374), he said:

"In exercising his judicial powers a justice represents the State rather than the township, and his officers may be any constable of the county as well as the sheriff and his juries may be summoned from the county at large. This being so, we can see no reason why the act of 1871 is not valid. It has been held in New York that there is no necessary disability in justices to hold criminal courts beyond their townships (*Gurnsey* v. *Lovell,* 9 Wend. [N. Y.] 319; *Schroepel* v. *Taylor,* 10 Wend. [N. Y.] 196), and we conceive the matter is left with the legislature."

It is said that the legislature had no power to delegate to the justice of the peace of the city of Lansing the right to call upon another person to discharge his judicial functions, and the general rule is relied upon that judicial offices must be exercised in person, and that therefore a justice cannot delegate his authority to another. If the act had provided that the justice could call in some person who was not possessed of judicial power and attempted to confer upon the jus-

tice of the peace of the city of Lansing the right to delegate such power to one not possessed of it under the Constitution of the State (section 1, article 7, Constitution of 1909), then this criticism would have some force; but here the officer called in already possesses the power and the statute in effect simply enlarged the jurisdiction of the justice of the peace who was called in to act. See *Root* v. *Mayor,* 3 Mich. 433; *Perrott* v. *Pierce,* 75 Mich. 578 (42 N. W. 1002).

The complaint against the respondent is by a police officer of the city of Lansing, and the warrant was placed in the hands of another police officer for service. The charter of the city of Lansing (section 116) provides that in a case where the complaint is made or process issued at the instance of any city officer or private citizen the said justice shall deliver all processes, civil or criminal, including commitments to the county jail and Detroit House of Correction, to a constable who shall serve the same. Section 213 of the charter with relation to the duties of policemen provides:

"They [policemen] shall have the power to serve any warrant, order or process whatsoever, issued or directed by any justice of the peace, judge, court or officer of the State of Michigan, in the execution of the laws of this State, for the prevention of crimes, and the punishment of offenders against the police laws and regulations of the city or State."

It is contended that because of section 116 of the charter this process should have been delivered to a constable, and that the policeman had no power to serve the same. We do not agree with this construction of the provision of the charter, and think that the provision in section 116 is merely directory and should not be so construed as to deprive the sheriff or any officer of the power lawfully conferred upon him to serve process. Clearly under section 213 the policeman had the power to serve the process in question,

and such a construction should be given the two sections as to make them both operative.

It is next contended that the warrant was void and no protection to the officer who attempted to serve it because it contained the following recital:

"Whereas, Frank Eurek hath this day made complaint in writing and on oath, to me, Charles F. Haight, a justice of the peace of the city of Lansing in said county. * * *"

It is conceded and established by the record that the complaint was not made to Charles F. Haight, but was made to Justice Charles G. Force, and it is urged by the attorney general in his brief that the mistake in name appearing in the warrant was simply a clerical error and that the recital above set forth is not a necessary part of the warrant. Howell's Tiffany's Criminal Law (4th Ed.), pp. 70-78, is cited. After describing the offense the warrant also contained the following recital:

"Whereas on examination on oath of said Frank Eurek and said John Gibbs, a witness, by me, the said justice of the peace, it appears to me said justice that said offense has been committed. * * *

"Given under my hand and seal at the city of Lansing in said county on the 20th day of October, A. D. 1915.          CHARLES G. FORCE,
 "Justice of the peace, acting for Charles F. Haight, justice of the peace."

It appears affirmatively from the warrant that the complaint was made on oath. The recital in the introductory part of when, where, and before whom the complaint was made is not, in our opinion, a necessary part of the warrant. Being of the opinion that it was properly issued by one in authority, which appeared on its face, we find no merit in the contention that the clerical error should invalidate the process. See

*Nolty* v. *State,* 17 Wis. 668; *State* v. *Dula,* 100 N. C. 423 (6 S. E. 89).

It appears that Justice Haight had been absent from the city of Lansing for about two months on account of illness, and in compliance with a request made by him before he left Lansing Mr. Force had been acting during the last twenty days of his absence, and was still acting on October 30, 1915, the date of the issuing of the warrant in this case. Shortly before the warrant was issued Justice Haight returned to the city, but did not reach his office until it was issued, and Justice Force had no knowledge of the return of Justice Haight at the time of its issuance. It is said that, it appearing that Justice Haight was actually in the city of Lansing at that time, the justice who issued it had no jurisdiction to act. We think such a reasonable construction should be given the language in the statute as to make it possible for the justice who has been absent to return to his place of business before it should be said that the person acting in his stead by virtue of the act has no longer any authority to act. It is necessary for the proper and orderly conduct of public affairs that some one should be in authority at all times to take complaints and issue warrants for the violation of the laws of the State and the municipality, and such was undoubtedly the purpose of the statute. It clearly appearing that no unreasonable time elapsed between the actual return of the justice and the issuing of the warrant, we do not think that the justice who issued it was without jurisdiction.

Other assignments of error relate to the exclusion of evidence and to the charge of the court. We have examined those relating to the exclusion of evidence, and find that no prejudicial error was committed by the court in any of his rulings. In the charge of the court it was said:

"It is admitted that the warrant which Le Roy Potter claimed to have had in his possession on that evening is a good and sufficient warrant."

This statement to the jury was not justified by the record, as it was not admitted that the warrant was good, but we do not think that it could be said to be prejudicial to the respondent's case, as the question of whether the warrant was good or bad was for the court to decide, and not for the jury.

It is also contended that error was committed because of the failure of the court to charge that the respondent might have been guilty of simple assault under the charge as laid in the information. No request for such an instruction was made by counsel. Under the proofs in this case the respondent was either guilty of resisting an officer armed with a good and sufficient warrant or he was not guilty of anything. He was in his own home when the effort was made to serve the warrant upon him, and if the officer was not armed with a good and sufficient warrant he had the right to order him out of the house and to use all the force reasonably necessary to put him out if he did not go. The failure of the court to instruct as to a lesser offense under these circumstances is not error. See *People* v. *Ezzo,* 104 Mich. 341 (62 N. W. 407).

After the court had instructed the jury and they had been out for some time they returned into court, and the following occurred:

"*The Court:* Gentlemen of the jury, have you arrived at a verdict?

"*The Foreman:* We have not.

"*The Court:* Have you been attempting to arrive at a verdict?

"*The Foreman:* Yes.

"*The Court:* When you are placed on the jury, it is your sworn duty to arrive at a verdict. In order to

arrive at a verdict you have got to discuss the matter impartially and fairly without prejudice, but you must do what you can to arrive at a verdict. That is what you are here for. Is there any portion of the law that you do not understand? (Several jurors answer "No.")

"*The Court:* If not, I will send you back to your room with the instruction that you ought to arrive at a verdict."

It is earnestly contended that the statement of the court to the jury that it was their sworn duty to arrive at a verdict was a clear misstatement of the law, and was therefore necessarily prejudicial. It is contended by the attorney general that the first sentence of the court's advice to the jury standing alone might be subject to criticism, but that what followed clearly defined the duty of the jury. In the case of *Pierce* v. *Pierce*, 38 Mich. 412, it is said:

"Jury trials can never be safe unless the verdict is made as far as possible the unbiased and free conclusion of every juror. Every attempt to drive men into an agreement which they would not have reached freely is a perversion of justice. It may be discretionary with the trial judge to keep a jury out until he is satisfied an honest and free agreement is not to be expected. But there is no legal propriety in keeping a jury confined unreasonably after they have come to an agreement and a verdict obtained by the suggestion of such an alternative is a verdict obtained by what it would be hard to distinguish from duress. It may be that the court is not bound to be present continually on the chances of an agreement; but any unusual and prolonged delay is not to be favored without giving an opportunity to find a sealed verdict."

That the verdict reached by the jury should be and must be each individual juror's own verdict, the result of his own convictions, is well established in our jurisprudence. No such instructions were given the jury. See *People* v. *Engle*, 118 Mich. 287 (76 N. W. 502). We think that the charge of the court telling the jury

that it was their sworn duty to arrive at a verdict was prejudicial to respondent's rights. The giving of an instruction to a jury which is prejudicial to respondent must be said to have resulted in a miscarriage of justice. See *People* v. *Humphrey, ante,* 10 (160 N. W. 445).

For this reason the verdict must be set aside, and a new trial granted.

STONE, C. J., and OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. PERSON, J., did not sit.