PEOPLE v ROCHOWIAK

Docket No. 62880. Argued January 5, 1982 (Calendar No. 2).—Decided December 23, 1982. Rehearing denied 417 Mich 1106.

Steven Rochowiak was convicted by a jury in the Recorder's Court of Detroit, Michael J. Connor, J., of second-degree murder. The court instructed the jury on second-degree murder and involuntary manslaughter, but denied Rochowiak's request for instructions on the lesser offense of careless, reckless, or negligent use of a firearm resulting in injury or death. The Court of Appeals, Danhof, C.J., and R. M. Maher and D. C. Riley, JJ., affirmed in an unpublished opinion per curiam (Docket No. 77-1779). The defendant appeals.

Justice Levin, joined by Justice Kavanagh, with Justice Williams concurring in the result, wrote:

Under the facts of the case, the evidence would have supported a verdict of guilty of the reckless use of a firearm, and it was error to refuse the requested instruction. The error was not rendered harmless by the jury's rejection of the option of convicting the defendant of involuntary manslaughter.

1. Careless, reckless, or negligent use of a firearm causing death is a cognate lesser offense of second-degree murder. A defendant's right to an instruction on reckless use depends on the evidence adduced at trial. If the proofs could support a verdict of guilty of reckless use, the defendant is entitled to an instruction, no matter how compelling the inferences supporting a contrary verdict. In this case, a verdict of guilty of reckless use of a firearm resulting in death would be supported by the evidence.

2. The jury was presented with only three alternatives: guilty of second-degree murder, guilty of involuntary manslaughter, or not guilty. The evidence that the defendant shot the victim was overwhelming, so the real question for the jury to deter-

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 40 Am Jur 2d, Homicide §§ 53, 525-535.
[2, 4] 40 Am Jur 2d, Homicide § 535.
    75 Am Jur 2d, Trial §§ 879, 880, 882.
[3, 5] 40 Am Jur 2d, Homicide § 531.

mine was the defendant's state of mind. Had the jury been instructed on reckless use in addition to involuntary manslaughter, it might better have understood the defendant's theory and have returned a verdict of involuntary manslaughter.

3. Failure to give an instruction on a lesser included offense may be harmless where it is clear that the jury was presented with a lesser offense or offenses consistent with the defendant's theory which it rejected and made findings of fact implicit in the verdict which would preclude conviction of the charge upon which an instruction was refused, or where the differences between the various offenses concern factual elements and not the state of mind of the defendant.

Reversed and remanded.

Justice Ryan, joined by Chief Justice Fitzgerald, dissented. Assuming that the evidence in this case would have allowed a rational finder of fact to find the defendant not guilty of second-degree murder or involuntary manslaughter, but guilty of careless, reckless, or negligent use of a firearm resulting in death, the refusal to give the requested instruction was, at most, harmless error. When the jury rejected the theory that the defendant was guilty of involuntary manslaughter and, instead, guilty of second-degree murder, it refused to find the defendant's act to be grossly negligent, but to be intentional, with an object to kill or with an indifference to the result of the act, knowing death to be likely. It defies logic and common sense to suggest that in a case where the jury has rejected the theory that the defendant was merely grossly negligent, failure to instruct on the option of finding the defendant merely reckless and negligent requires reversal.

OPINION BY LEVIN, J.

1. HOMICIDE — SECOND-DEGREE MURDER — RECKLESS USE OF A FIRE-
    ARM — JURY INSTRUCTIONS.
    *Careless, reckless, or negligent use of a firearm resulting in death
    is a cognate lesser offense of second-degree murder, and where
    a verdict of guilty of reckless use could be supported by the
    proofs, a defendant is entitled to an instruction on reckless use
    no matter how compelling the inferences supporting a contrary
    verdict (MCL 750.317, 752.861; MSA 28.549, 28.436[21]).*

2. CRIMINAL LAW — LESSER INCLUDED OFFENSES — JURY INSTRUC-
    TIONS — FAILURE TO INSTRUCT.
    *Failure to give an instruction on a lesser included offense may be
    harmless where it is clear that the jury was presented with a*

*lesser offense or offenses consistent with the defendant's theory which it rejected, and made findings of fact, implicit in the verdict, which would preclude conviction of the charge upon which the instruction was refused, or where the differences between the various offenses concern factual elements and not the state of mind of the defendant.*

3. HOMICIDE — SECOND-DEGREE MURDER — INVOLUNTARY MAN-SLAUGHTER — RECKLESS USE OF A FIREARM — JURY INSTRUCTIONS.

*Instruction on second-degree murder and involuntary manslaughter and refusal to instruct on careless, reckless, or negligent use of a firearm resulting in death was error where the evidence that the defendant shot the victim was overwhelming and the real question for the jury to determine was the defendant's state of mind where, had the jury been instructed on reckless use, it might better have understood the defendant's theory and have rejected a verdict of guilty of second-degree murder in favor of guilty of involuntary manslaughter (MCL 750.317, 750.321, 752.861; MSA 28.549, 28.553, 28.436[21]).*

DISSENTING OPINION BY RYAN, J.

4. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES.

*The office of an instruction on a lesser included offense is to provide the jury with the option of a verdict which is reasonably raised by the evidence, not to enable the jury to assess the defendant's argument in a different light and with better understanding or to enable a jury to understand the defendant's theory better.*

5. HOMICIDE — SECOND-DEGREE MURDER — INVOLUNTARY MAN-SLAUGHTER — RECKLESS USE OF A FIREARM — JURY INSTRUCTIONS.

*Failure to instruct on careless, reckless, or negligent use of a firearm resulting in death as requested by a defendant and instead instructing on second-degree murder and involuntary manslaughter was harmless error, where the jury rejected the theory that the defendant was merely grossly negligent and thus guilty of involuntary manslaughter, and, rather, found his acts to be intentional, with an object to kill or with an indifference to the result of the act, knowing death to be likely (MCL 750.317, 750.321, 752.861; MSA 28.549, 28.553, 28.436[21]).*

*Frank J. Kelley,* Attorney General, *Louis J.*

*Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Carolyn Schmidt,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *James Krogsrud)* for the defendant.

LEVIN, J. The question is whether Rochowiak, who was tried for second-degree murder,[1] was entitled to a jury instruction on the lesser offense of careless, reckless, or negligent use of a firearm resulting in injury or death (reckless use),[2] and, if the instruction was erroneously refused, whether that error was harmless because the jurors chose to convict him of second-degree murder although they were given the option of acquitting on that charge and convicting of involuntary manslaughter.

We hold i) the evidence would have supported a verdict of guilty of reckless use, and it was therefore error under *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975), to refuse the requested instruction, and ii) the error was not rendered harmless by the jury's rejecting the option of convicting Rochowiak of involuntary manslaughter.

I

The body of Timothy Palmer was discovered by

---

[1] MCL 750.317; MSA 28.549.

[2] "Any person who, because of carelessness, recklessness or negligence, but not wilfully or wantonly, shall cause or allow any firearm under his immediate control, to be discharged so as to kill or injure another person, shall be guilty of a misdemeanor, punishable by imprisonment in the state prison for not more than 2 years, or by a fine of not more than $2,000.00, or by imprisonment in the county jail for not more than 1 year in the discretion of the court." MCL 752.861; MSA 28.436(21).

police officers at 8:15 a.m. on July 31, 1976, in a
parking lot in Rouge Park in Detroit. An autopsy
revealed that the cause of death was one shotgun
wound in the right arm and right chest. Palmer
was found in a yellow Pinto parked in the parking
lot. He was in the driver's seat, slouched to the
right with his head turned to the right. His left
hand was lying over the lower portion of the
steering wheel, and his right hand was on his
right leg. The passenger side window was shat-
tered, and the door was locked.

Rochowiak was charged with first-degree mur-
der. The charge was reduced to second-degree
murder at the preliminary examination. He was
tried before a jury in March of 1977.

At trial, John Palarcho testified that he had
lived across the street from 19-year-old Rochowiak
for approximately 14 years. On July 31, at about 7
or 7:30 a.m., the Palarchos received a phone call;
Rochowiak arrived a minute later. He was wearing
cutoff jeans and was without shoes, socks, or a
shirt. He was "bleeding from the nose, his nose
was split open, lacerations and puffed up lip and
black and blue around the mouth area". He asked
John Palarcho to take him to the hospital.

On the way to the hospital, Rochowiak insisted
on telling Palarcho how he was injured. He
slurred out nervously that he had "killed a queer".
He said he had gone over to the park to rob. He
explained that he might have been holding the
gun too close to his mouth and the gun discharged.
He also stated: "Maybe that will keep the rest of
them from coming in there." He said he had
thrown the gun in some bushes or trees away from
the scene. He asked Palarcho, "Didn't you ever kill

anybody?" During the ride to the hospital, Rochowiak spoke clearly, did not stutter or stammer, had no difficulty controlling his movements, and did not have a glazed look in his eyes.

Palarcho left Rochowiak at the hospital and, curious about his story, drove through Rouge Park where he saw several police cars and an EMS unit. He returned home and approximately 20 minutes later received a phone call from Rochowiak asking to be picked up at the hospital. Palarcho drove back to the hospital and met Rochowiak on the way, walking in the street. Palarcho told Rochowiak what he had observed in the park, and Rochowiak insisted on Palarcho taking him there. When they drove through, Rochowiak said, "Everything's all right. They're not even looking in the right area."

During the afternoon of July 31, Rochowiak called again. He stated that he had admitted himself to Hutzel Hospital and asked Palarcho to call him if there were any new developments. Palarcho asked Rochowiak to turn himself in, but Rochowiak refused and stated that he might leave town or turn the gun on himself. At 9 o'clock that night, Rochowiak called again and explained that Palarcho should not worry because someone at the hospital had told him that if the police did not find the gun, they could not connect Rochowiak with the killing.

Officer Robert Lazur testified that he first saw Rochowiak at Hutzel Hospital on August 2. When Lazur advised him of his *Miranda* rights,[3] Rochowiak responded, "How did you find me?" Rochowiak

---

[3] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

inquired several times how long a sentence he would be likely to receive. Lazur responded, "That all depends on the final charge". Rochowiak commented, "Well, don't you think some of them have it coming?"

While standing at the foot of Rochowiak's hospital bed, Lazur looked toward an open cabinet near the bed and noticed a newspaper clipping. The clipping concerned the homicides over the previous weekend. There was also a pad near the newspaper clipping. On the pad was the following, written by Rochowiak:

" 'When you're young, you can go to jail for murdering someone; but there's all these young people out there that's just waiting to go to hell, and they if not there for sure a cell. And when they get in a jam they will wish they were Uncle Sam; and if they're weird, they're going to end up a queer. But even if they ain't, they're going to be a little faint.

" 'A little while ago I killed a man, and boy, I never ran; a scared chicken waiting for a licking. But there's a lot of people out there killing, and when they get a big thrilling, and in a while they're going to get a chilling from the enbalming fluid.

" 'In this song there's an end, but there's just one thing.. It's where there, they gonna be in the end. But if you ask me, they're going to be judged by God, and He's, He's the one with the power to send them to that big tower in the sky. And that is where they can fly.' "

Rochowiak's defense was that at the time of the killing, and for some time after, he was under the influence of drugs and his capacity to understand, and therefore his responsibility for, his actions was diminished to the point that the jurors should have a reasonable doubt about the true meaning of the statements made by him and of the actions

allegedly taken by him. Rochowiak's mother, sister, and brother all testified to his use of drugs beginning at the age of 14. His mother also testified that he seemed to feel that there were people watching him who could hear everything that was said in their house.

At the close of trial, defense counsel requested that the judge instruct on reckless use, citing *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975). The judge ruled that the evidence did not support a conviction of this charge and instructed on second-degree murder and involuntary manslaughter. The Court of Appeals affirmed without discussion.[4]

## II

Careless, reckless, or negligent use of a firearm causing death is a cognate lesser offense of second-degree murder. As stated in *People v Ora Jones, supra,* pp 389-390:

"While it is true that reckless discharge of a firearm causing death is not *always* a lesser included offense of second-degree murder, *e.g.,* if the killing were done by stabbing, it *may be* such a lesser included offense, as it was in the case at bar.

"Analysis of the offense charged (second-degree murder), and the lesser offense on which instruction was requested (careless, reckless, or negligent discharge of a firearm causing death), demonstrates the overlapping of certain elements and common statutory purpose. The common purpose is the protection against killing or injury to the person. The overlapping elements relate first to a 'reckless' state of mind concerning damage to human life and secondly to an activity or intended activity to kill or injure a person. Both of these overlapping elements relate to the common purpose of the

---

[4] The opinion of the Court of Appeals is unreported.

statutes, *i.e.,* to protect against killing or injury to the person. The offenses are cognate; the elements shared by the two offenses coincide in the harm to the societal interest to be protected." (Emphasis in original.)

A defendant's right to an instruction on reckless use depends upon the evidence at trial. If the proofs could support a verdict of guilty of this charge, the defendant is entitled to the instruction, no matter how compelling the inferences supporting a contrary verdict.

The people argue that the evidence at trial would not support a conviction of reckless use because the only fair inference from the testimony is that the shooting was an intentional or, at least, a wilful and wanton act. *Ora Jones* is distinguished as a case where the defense theory was accident. Here, in contrast, Rochowiak claimed that he was influenced by drugs to the extent that he could not act with a criminal purpose aimed against life. But there was no evidence that Rochowiak was so influenced on the morning of the offense.

While the evidence might more strongly suggest inferences which would support a finding of guilty of the greater offense, the jury is free to view the evidence otherwise and return a verdict of guilty of a lesser offense which is also supported by the evidence.

In this case, while the evidence might strongly suggest to some that Rochowiak possessed an intent to kill or was at least wilful and wanton in his actions, a verdict of guilty of reckless use would also be supported by the evidence. The jury was free to conclude that Rochowiak did not intend to kill, and that the shooting was not wilful and wanton, but only reckless.

### III

The people, relying on *People v Herbert Ross,* 73 Mich App 588; 252 NW2d 526 (1977), argue that the trial court's failure to instruct on reckless use, although error, was harmless and not cause for reversal.

*Ross* holds that the failure to give a requested instruction on a lesser offense is not cause for reversal if the jury was instructed on another lesser offense and nevertheless returned a verdict of guilty of the greater offense. The rationale of *Ross* is that a jury which has been given and has rejected the option of compromising on an intermediate verdict (between guilty of the greater offense and not guilty) would, in all probability, also have rejected the option of finding the defendant guilty of an even lesser charge.

In *People v Richardson,* 409 Mich 126; 293 NW2d 332 (1980), this Court reversed a conviction of first-degree murder where the judge instructed on the lesser offenses of second-degree murder and voluntary manslaughter but refused to instruct on involuntary manslaughter and reckless use. The people, relying on *Ross,* argued that the error was harmless. Without deciding whether the failure to give a required instruction on a lesser offense could ever be harmless error, this Court concluded that it was not harmless in *Richardson.* Richardson's defense was based on accident, self-defense, and provocation. Because each of the offenses upon which instructions were given concerned intentional homicide and no instruction relating to involuntary manslaughter or reckless use was presented to the jury, the jury was prevented from considering Richardson's claims of mitigation ex-

cept insofar as those claims supported a finding of not guilty of any offense. This Court therefore concluded that Richardson was denied a fair opportunity to have the jury assess his theory of the case. The people argue that *Richardson* is not controlling since Rochowiak was granted an instruction consistent with his theory of the case— involuntary manslaughter. We agree.

The Court is thus again called upon to address the question of the validity of the rationale of *Ross* and its proper scope.

## IV

Rochowiak argues that the doctrine of harmless error should not apply to the trial court's failure to give a requested instruction on a lesser included offense because such a failure will always dilute the jury's authority. In *Chamblis,* the Court recognized that the jury serves as the conscience of the community and has ultimate authority to evaluate the evidence and convict or acquit of any charge which is supported by some, even the most lenient, view of the evidence. All recognize that juries often compromise and convict of lesser included offenses in the face of evidence strongly favoring conviction of a greater offense. In order for the jury to be accorded an opportunity to operate within the full range of its authority as factfinder, it must be fully apprised of the possible verdicts. Indeed, this was the rationale of the *Ora Jones* and *Chamblis* cases.

The people assert that the rationale of the lesser included offense cases does not mandate a rule that no error in applying those cases will be judged harmless. One can agree that the jury must

in all cases be instructed on the full spectrum of offenses that might be supported by the evidence in order to assure the right and authority of the jury to assess the evidence, find the facts, and determine whether each and every element of an offense has been proven, without concluding that error in failing to so instruct is prejudicial in each and every case. Where the jury has been instructed on, and rejects, the defendant's argument in favor of a lesser offense closely allied to the offense upon which the instruction has been refused, and chooses to find the defendant guilty of a greater offense, finding the people's evidence to be credible and its suggested inferences to be correct, it can safely be presumed that the failure to give the instruction in no way affected the verdict. The jury has clearly expressed both its rejection of the defendant's theory of the case and its decision not to be merciful.

The people argue that the failure to instruct on the lesser included offense of reckless use was harmless in this case because Rochowiak suffered no prejudice from the error. The jury had an opportunity to consider his theory of the case when it was instructed on involuntary manslaughter. In rejecting the option of convicting of involuntary manslaughter in favor of returning a verdict of guilty of second-degree murder, the jury expressed its rejection of Rochowiak's defense. It strains credulity to argue that a jury which refused to find his acts grossly negligent, wilful, and wanton, because it believed them to be intentional, would have opted to find the same acts careless and reckless, but not wilful and wanton, if given the opportunity.

The people further contend that it cannot be

argued that the jury's ability to compromise was restricted or impaired to Rochowiak's prejudice. Had the jury returned a verdict of guilty of involuntary manslaughter, there would indeed be a question whether the jurors would have exercised even greater mercy and found Rochowiak guilty of reckless use had they been given the opportunity. As it turned out, however, the jury was not disposed to leniency or compromise. It rejected involuntary manslaughter as an intermediate offense lying between the charge of murder and the verdict of not guilty and chose to convict of murder.

V

While the arguments that it is highly unlikely that the jury would have convicted of reckless use and that Rochowiak's theory of the case was presented to and rejected by the jury are most compelling, we are persuaded that had the jury been instructed on reckless use, in addition to involuntary manslaughter, it might have better understood Rochowiak's theory and have returned a verdict of guilty of involuntary manslaughter.

In Rochowiak's case, the jury was presented with three options—guilty of second-degree murder, guilty of involuntary manslaughter, or not guilty. Under the circumstance that the evidence that Rochowiak shot Palmer was overwhelming, the third option was unrealistic. The real question for jury consideration was Rochowiak's state of mind. When he discharged the gun, did he do so intentionally, with an object to kill or with indifference to the result knowing that death was likely, or, as was argued at trial, was he under the influence of drugs so that his perception of reality was so warped that he could not appreciate the quality of

his actions or form the intent requisite for murder? Was the discharge itself intentional or was it the result of Rochowiak's handling the gun, without intent to kill, in a grossly negligent and wilful and wanton manner; or, finally, was Rochowiak's handling of the gun at the window of his victim's car a careless, reckless, and negligent act, not wilful and wanton because of his drugged state?

Rochowiak argues, and we are persuaded, that had the jurors been apprised of the third possibility on the spectrum of criminal responsibility, they might have assessed his argument in a different light and with a better understanding of the gradations of responsibility in the law of homicide. Rather than viewing a verdict of guilty of involuntary manslaughter as one which would minimize the heinous nature of his act, they may have ascribed greater importance to the language "wilful and wanton" as a grave and guilty state of mind distinguishing Rochowiak's actions from that of a careless and reckless person, and have settled upon the intermediate level of criminal responsibility.

As in *Richardson,* we do not hold that failure to give lesser offense instructions can never be harmless. The error may indeed be harmless in a case where it is clear that the jury was presented with a lesser offense or offenses consistent with the defendant's theory which was rejected, and made findings of fact, implicit in the verdict, which would preclude conviction of the charge upon which an instruction was refused, or where the differences between the various offenses concern factual elements, the existence of a weapon (armed or non-armed), the completion of the offense (attempt), the use of force (larceny or robbery) and

not the state of mind of the defendant (murder, manslaughter, reckless use; assault with intent to murder, with intent to commit great bodily harm less than murder, felonious assault).

The recognition that not all instructional error of this kind is cause for reversal should not cause concern that this Court's failure to impose stricter standards will result in a disregard of this Court's decisions in the lesser offense cases. A trial judge cannot know whether error in instructing may be harmless until the verdict is returned. A verdict of guilty may be returned on one of the lesser offenses, and the failure to instruct would be reversible error.

Reversed and remanded for a new trial.

KAVANAGH, J., concurred with LEVIN, J.

WILLIAMS, J., concurred in the result.

RYAN, J. I dissent.

While admitting that the trial court's refusal to give an appropriate instruction may be harmless error, my colleague finds the refusal to give the lesser included instruction on the reckless use of firearms to be reversible error in this case not because, on the basis of the evidence, the jury might reasonably have returned that verdict, but because, if given the instruction, the jury "might have better understood Rochowiak's theory and have returned a verdict of guilty of involuntary manslaughter", and because the jurors "might have assessed [the defendant's] argument in a different light and with a better understanding of the gradations of responsibility in the law of homicide".

In holding that the reckless use of firearm in-

struction would have better explained the requisite elements required for second-degree murder and manslaughter, the Court implicitly determines that the proposed criminal jury instructions on second-degree murder and manslaughter which have been recommended for use by this Court, standing alone and without the further explanation provided by the reckless use instruction, are too confusing and unclear to sustain a conviction. Needless to say, I think that proposition is unsupportable.

Insofar as I can determine, it has never been the office of a lesser included offense instruction to enable the jury to assess the defendant's argument "in a different light and with better understanding", or to enable a jury to better understand the defendant's theory. I have always thought that the office of the lesser included offense instruction is to provide the jury a verdict option which is reasonably raised by the evidence. *People v Phillips,* 385 Mich 30; 187 NW2d 211 (1971); *People v DeMeaux,* 194 Mich 18, 28; 160 NW 634 (1916); *People v Beverly,* 108 Mich 509, 510-511; 66 NW 379 (1896); see also *Hopper v Evans,* 456 US 605; 102 S Ct 2049; 72 L Ed 2d 367 (1982).

As the Court points out, it is because the defendant's "state of mind" was primarily at issue in this case that the question arises whether a reckless use of firearm instruction should have been given.

When the jury rejected the theory that the defendant was guilty of involuntary manslaughter, but instead was guilty of murder in the second degree, it refused to find the defendant's act grossly negligent and found it instead to be intentional, with an object to kill, or with an indifference to the result knowing that death was likely.

In my judgment, it defies logic and common sense to suggest that, in a case in which the jury rejected the theory that the defendant was merely grossly negligent, it is reversible error to fail to provide them the option of finding him merely reckless and negligent.

Assuming, without deciding, that the evidence in this case would have allowed a rational finder of fact to find the defendant not guilty of second-degree murder or involuntary manslaughter, but guilty of careless, reckless, or negligent use of a firearm, the refusal to give the requested instruction on reckless use was, at most, harmless error.

I would affirm the judgment of the Court of Appeals.

FITZGERALD, C.J., concurred with RYAN, J.

COLEMAN and RILEY, JJ., took no part in the decision of this case.