PEOPLE v BEACH

PEOPLE v EDWARDS

Docket Nos. 75058, 76536. Argued October 7, 1986 (Calendar Nos. 7-8). Decided January 19, 1988.

Marian Beach was convicted by a jury in the St. Clair Circuit Court, Ernest F. Oppliger, J., of attempted second-degree murder and conspiracy to commit armed robbery. The Court of Appeals, V. J. BRENNAN and J. H. GILLIS, JJ. (HOOD, P.J., concurring in part and dissenting in part), affirmed in an unpublished opinion per curiam, holding that the trial court properly denied a requested instruction on conspiracy to commit larceny in a building as a cognate lesser included offense of conspiracy to commit armed robbery because the evidence did not support such a finding (Docket No. 63628). The defendant appeals.

Jerry L. Edwards was convicted by a jury in the Washtenaw Circuit Court, Edward D. Deake, J., of first-degree felony murder. The Court of Appeals, J. H. GILLIS, P.J., and M. J. KELLY and SANBORN, JJ., affirmed in an unpublished opinion per curiam, holding that the trial court properly denied a requested instruction on involuntary manslaughter as a cognate lesser included offense of first-degree murder, finding that the felony of arson precluded the instruction (Docket No. 73615). The defendant appeals.

In an opinion by Justice BRICKLEY, joined by Chief Justice RILEY and Justices LEVIN, CAVANAGH, and ARCHER, the Supreme Court *held:*

In *People v Beach,* the evidence supported an instruction on the cognate lesser included offense of conspiracy to commit larceny in a building; thus, the failure to so instruct was error. However, because the jury rejected the lesser included offense

REFERENCES

Am Jur 2d, Trial §§ 876-882.

Lesser-related state offense instructions: Modern status. 50 ALR4th 1081.

Modern status of law regarding cure of error, in instruction as to one offense, by conviction of higher or lesser offense. 15 ALR4th 118.

of conspiracy to commit unarmed robbery and, instead, convicted the defendant of the charged greater offense of conspiracy to commit armed robbery, the error was harmless.

In *People v Edwards,* the evidence adduced at trial was insufficient to warrant an instruction on the cognate lesser included offense of involuntary manslaughter.

1. Lesser included offenses of charged offenses may be either necessarily included offenses or cognate lesser included offenses. Where a lesser offense is necessarily included, the evidence adduced at trial will always support the lesser offense if it supports the greater. Where a lesser offense is cognate, it shares several elements with and is of the same class or category as the greater offense, but may contain some elements not found in the greater. Cognate offenses require the evidence to be examined case by case to determine whether it would support a conviction of the lesser offense. A defendant may request and receive instructions on necessarily included offenses without regard to the evidence; where the evidence is sufficient to support a conviction of a cognate lesser offense, a defendant may request and receive an instruction.

2. Where evidence adduced at trial is sufficient to support a conviction of a cognate lesser included offense, failure to give a requested instruction is error. However, where the jury had a choice of convicting a defendant of an additional lesser offense, but instead returned a conviction of a greater offense, such error is harmless, and reversal is not required.

3. In *Beach,* the jury was instructed on the charged offense of conspiracy to commit armed robbery as well as conspiracy to commit unarmed robbery. If it had doubts about the defendant's guilt of the charged offense, it could have found her guilty of the instructed lesser offense. Because it did not, it can be concluded that it had no reasonable doubt with respect to the defendant's guilt of the greater offense. Thus, the failure to instruct on the requested cognate lesser offense of conspiracy to commit larceny in a building, while error, was harmless.

4. In *Edwards,* the evidence was not sufficient to warrant an instruction on the cognate lesser included offense of involuntary manslaughter. Where the evidence suggests only that the criminal act which causes death naturally tends to cause death or great bodily harm, an instruction on involuntary manslaughter is not justified.

Affirmed.

Justice BOYLE, concurring, agreed with the reasoning of and the result reached by the majority with regard to the harmless

error doctrine, and with the result reached by the majority in both cases.

Justice GRIFFIN took no part in the decision of these cases.

1. CRIMINAL LAW — JURY INSTRUCTIONS — COGNATE LESSER INCLUDED OFFENSES.

Instruction on a cognate lesser included offense is proper where the evidence adduced at trial is sufficient to convict of the requested lesser offense.

2. CRIMINAL LAW — JURY INSTRUCTIONS — COGNATE LESSER INCLUDED OFFENSES — HARMLESS ERROR.

Failure to give a requested instruction on a cognate lesser included offense where the evidence adduced at trial is sufficient to support a conviction of the offense is error; however, the error is harmless where the jury is instructed on an additional lesser offense, but nevertheless returns a verdict of guilty of a greater offense.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert H. Cleland,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people in *Beach; William F. Delhey,* Prosecuting Attorney, and *Lynwood E. Noah,* Deputy Chief Assistant Prosecuting Attorney, for the people in *Edwards.*

State Appellate Defender (by *Mardi Crawford*) for defendant Beach.

*Don Ferris* for defendant Edwards.

BRICKLEY, J. These two cases require a determination whether the conclusions of the lower courts, that evidence adduced at trial was insufficient to support requests for instructions on cognate lesser included offenses, were in error. If these determinations were in error, we are asked to decide whether the failure to instruct on the lesser included offenses was harmless.

In *People v Edwards,* we conclude that the requested cognate lesser offense instruction for

involuntary manslaughter was not supported by the evidence, and, hence, the failure to instruct was not error.

In *People v Beach,* we conclude that the requested cognate lesser offense instruction for conspiracy to commit larceny in a building was supported by the evidence, thus, failure to instruct was error. However, because the jury rejected the lesser included offense of conspiracy to commit unarmed robbery and convicted the defendant of the greater charged offense of conspiracy to commit armed robbery, we hold the error to be harmless. In doing so, we adopt and apply a type of harmless error analysis developed in *People v Herbert Ross,* 73 Mich App 588; 252 NW2d 526 (1977).[1]

## I. FACTS AND PROCEDURE

### A. PEOPLE v EDWARDS

We accept the Court of Appeals recitation of the facts in this case:

> Defendant was convicted as charged of first-degree murder, MCL 750.316; MSA 28.548. He received the mandatory sentence of life imprisonment. Defendant now appeals his conviction as of right and we affirm.
>
> On August 18, 1982, M. L. Hargrow perished in a fire that consumed a private residence in Ann Arbor, Michigan. The residence had been converted into numerous apartments and Hargrove [sic] was a resident of one of the second floor units. The point of origin of the fire was the front porch where fire officials discovered the presence of inflammable liquids. An empty can of charcoal lighter fluid was also found on the porch.

---

[1] Although we accept this analysis, we have not reviewed and do not adopt every prior application by the Court of Appeals of the *Ross* analysis.

Two days prior to the fire, defendant and Pat Johnson, a resident of one of the first floor units, had become involved in a heated argument leading to a physical altercation. At that time, defendant, who was drunk and under the influence of marijuana, threatened to burn up the house and everyone in it. Early in the morning of August 18, 1982, defendant and several other people were drinking at the apartment of Andrew Richardson. Defendant left the apartment around 1 o'clock in the morning and returned later, informing Richardson that he had burned down the house on Ann and State Street. Defendant's hands smelled of gasoline and he removed the t-shirt that he was wearing and threw it in Richardson's clothes hamper. Richardson turned defendant's t-shirt over to the police the following day and an expert in the analysis of materials determined that the shirt contained traces of gasoline. Defendant told Richardson and others that he would "blow their heads off" if they informed anyone about what he had done. Defendant also admitted to another friend that he had firebombed Pat Johnson's house.

Defendant presented virtually no evidence at trial.

Prior to closing argument, defendant requested an instruction on involuntary manslaughter as a lesser included offense of murder. The trial court denied the request on the ground that the evidence did not support a manslaughter conviction. Following the court's instructions to the jury, defendant objected on the record to the manner in which the trial court had instructed on felonymurder.

The felony-murder instruction, it was argued by the defendant, left the jury with an impression that the intent necessary to establish first-degree murder could be inferred by finding an intent to commit arson. The Court of Appeals found no error since the prosecution had introduced evidence to support either first-degree murder or

felony murder, see *People v Johnson,* 99 Mich App
547; 297 NW2d 713 (1980), lv den 412 Mich 928
(1982), and found that the instructions, in their
entirety, were not prejudicial because they clearly
directed the jury to not equate intent to commit
arson with malice. Any ambiguity was found to be
minimal and "corrected."

The allegation of error in the trial court's re-
fusal to instruct on the lesser included offense of
involuntary manslaughter was also rejected by the
Court of Appeals. Edwards argued that the proofs
presented by the state, and the fact that the fire
started outside the residence, could lead to the
inference that the perpetrator acted in a grossly
negligent manner rather than with malice, that is,
he never intended anyone in the house to be killed
in the fire. The trial court refused the lesser
included offense instruction because it determined
that the evidence would not support such an in-
struction.

As a cognate lesser included offense, the Court
of Appeals reviewed the evidence to determine
whether an instruction on involuntary manslaugh-
ter was required. The panel agreed with the trial
court that the evidence did not support the re-
quested instruction, finding the felony of arson to
preclude an instruction on involuntary manslaugh-
ter. Accordingly, the Court of Appeals affirmed the
conviction.

### B. PEOPLE v BEACH

The Court of Appeals set forth a lengthy and
detailed recitation of this case, including defen-
dant's first trial. Essentially, defendant's live-in
male companion, Jack Turner, testified against her
about a series of events that led to defendant
being charged with the first-degree felony murder

of Sidney Dunbar and conspiracy to commit armed robbery. She was convicted of attempted murder in the second degree and conspiracy to commit armed robbery. Excerpts of the Court of Appeals factual recitation are as follows:

Late Friday night, May 26, 1978, he [Turner] and defendant drove to the Cinema Blue on Port Huron's north side. He sat in the car while defendant went in. As defendant returned to the car, she was approached by Sidney Dunbar and exchanged words with him. She then came over to the car, picked up her purse, put a small paring knife in it, and told Turner to follow her. Defendant then left with Dunbar in the latter's car. Turner followed to Dunbar's house where he observed defendant and Dunbar go inside. Later, he knocked on the door and introduced himself as defendant's brother when Dunbar answered the door. Dunbar allowed him in and they discussed defendant's safety and the procurement of women for sexual favors.

Defendant came out of the bedroom and joined the conversation for a while before signalling to Turner that she had Dunbar's money. Turner and defendant then left promising to be in touch with Dunbar. They went home and showed defendant's father the $300 they had taken and discussed with him stealing more money and other property from Dunbar.

Turner further testified that later, the next week, accompanied by defendant, they went to Dunbar's house where an argument occurred regarding the money that defendant had taken from Dunbar the previous week. Turner said, as he was attempting to tie Dunbar up, that he charged and Turner stabbed him. As Turner and Dunbar fought, defendant stabbed Dunbar in the head and back. Turner stabbed Dunbar four or five times killing him. They then left with some money and Dunbar's car. They returned later to wipe away fingerprints and take more items of property.

Turner was not sure if Dunbar was really dead, so he got a knife from the kitchen and stabbed him again. The next morning, Turner borrowed his brother's car to go to the bank where he unsuccessfully tried to cash Dunbar's paycheck. Saturday afternoon, upon hearing that his brother had been arrested regarding the paycheck, Turner went with defendant to the police station to clear his brother.

Turner's testimony was corroborated to the extent that employees at the Cinema Blue had seen Turner and defendant on the premises the nights of May 26 and June 2, 1978. Furthermore, Dunbar was considered a frequent customer there and had been seen the night of June 2, 1978. Also, Nancy Gates Warr testified that she was returning home on May 26, 1978, after a movie double feature at a drive-in when she saw Dunbar, who was white, standing in the parking lot of Cinema Blue, talking to a black female.

Defendant took the stand on her own behalf and also produced alibi witnesses. She denied knowing Sidney Dunbar. She testified that she had been asleep on Friday night, May 26, 1978, when Turner woke her up to show her $300 he had won gambling. Mr. Beach, defendant's father, was sleeping on the couch at defendant's and Turner's place that night and he testified to the same sequence of events. Defendant and Mr. Beach denied any knowledge of Dunbar. As to Friday, June 2, 1978, defendant did not disagree with many of the things Turner said they had done. Defendant related how they dropped the children off at the babysitter's, had visited the Cinema Blue, and had eaten fish and chips by the Black River. Defendant's version of what occurred in the evening was markedly different. After picking up Little Jack, their son, at the babysitter's, they dropped him off at defendant's mother's. Eunice Jackson, defendant's mother, confirmed this. Turner later drove defendant to the Cinema Blue, but all that occurred was that defendant checked with "Cookie," the gameroom hostess, about going out after work.

Defendant decided against going out with Cookie that night, so Turner dropped her off at home and left. Defendant then decided to join a party with some other friends in South Park. Defendant's presence in South Park from around midnight until nearly 4:00 A.M. was confirmed by her mother and two friends, Issac Campbell and Darryl Manns.

A denial of a motion to quash the conspiracy to commit armed robbery charge was upheld as being supported by the evidence. The Court of Appeals found that the trial court had correctly concluded that the magistrate did not abuse his discretion.

A challenge to the trial court's denial of motions for mistrial due to prosecutorial misconduct was also rejected. The trial court informed counsel of the guidelines for argument and cautioned the jury.

The Court of Appeals found that the trial court read both parties' theories accurately and set forth their positions at trial; they were stated fairly, and equal stress was given to each party. In addition, defendant did not specify what her objection to the prosecutor's theory was.

Defendant's claim that the trial court erred on its reinstruction on the intent required for attempted second-degree murder was also rejected. The Court of Appeals held that any confusion was "cleared up."

The Court of Appeals majority briefly addressed what has become the issue of primary concern—the lesser included offense instruction.

> Defendant also claims that the court erred in not giving a charge on a lesser included offense of conspiracy to commit larceny in a building.
> The court properly denied that request as the evidence did not support such a finding and where

there is no evidence to support such a finding on a lesser included offense, defendant is not entitled to it.

Although the majority did not deem it necessary to present a detailed analysis, Judge HOOD did in his partial concurrence and partial dissent. Judge HOOD believed that the trial court did err when it refused to give an instruction on conspiracy to commit larceny. He based his conclusion on the cognate lesser included analysis of *People v Ora Jones,* 395 Mich 379; 236 NW2d 461 (1975), and the evidence.

> Counsel for defendant requested that the jury be instructed on the lesser offense of larceny in a building or some other type of felony larceny, and the trial court refused. This was error. Where evidence supports conviction of a lesser included offense, defendant is entitled to such an instruction. Failure to give that instruction when requested is reversible error. *People v Ora Jones,* 395 Mich 379, 390.
>
> The evidence in this case could have supported the lesser offense. Turner, the admitted killer, testified that he and defendant stole money from the decedent on an earlier occasion without using force, and that on that same night they discussed returning to decedent's home for the purpose of getting more money. Turner's testimony as to how they planned to get the money varied. At one point, for instance, he indicated that he and defendant considered the possibility of obtaining money in return for sexual favors. It is entirely possible that the jury could have concluded that there was a conspiracy to steal, but that use of force was not a part of the agreement.

Judge HOOD also took exception to the trial court's rationale for refusing to instruct on the lesser included offense.

I note that the reason given by the trial judge for refusing to give the lesser offense was that since he was refusing to give larceny as an underlying felony for the murder count, it should not be given in connection with the conspiracy to rob count. This reason is untenable. "Symmetry is neither an object of criminal procedure nor a proper criterion of fairness." *People v Hayes,* 410 Mich 422, 425; 301 NW2d 828 (1981). In addition, the court was not truly treating the parties symmetrically. Larceny in the conspiracy charge would relate to defendant's intent at the time she agreed with Turner to take decedent's property. This is wholly separate from her acts at the time of Dunbar's death.

Neither the majority nor Judge HOOD discussed harmless error.

## II. PRIMARY LEGAL DOCTRINES

The resolution of the primary issues in these cases requires the application of two legal doctrines. Each will be briefly reviewed in this section before applying them.

### A. LESSER INCLUDED OFFENSE INSTRUCTIONS

Although case law now provides sure guidance to instructions on lesser included offenses, Michigan case law prior to 1975 was not particularly clear in the realm of lesser included offenses.[2] In response to the problem, the Court released a series of opinions in 1975. As Chief Justice COLEMAN stated, "The definitions and the array of possible components of 'lesser included offenses' of the one(s) charged have fueled many appellate confrontations in Michigan. . . . It was our pur-

[2] See Koenig, *The many-headed hydra of lesser included offenses: A Herculean task for the Michigan courts,* 1 Det C L R 41 (1975).

pose to provide some uniformity and direction in nine simultaneously released opinions." *People v Jones, supra,* 395.

The two classes of lesser included offenses and the differences in application were articulated in *Jones, supra.* Jones was tried for the shotgun slaying of his roommate. He argued that it was accidental. The court instructed the jury on murder in the second-degree and voluntary manslaughter, but ruled that the defendant was not entitled to an instruction on the statutory offense of killing or injuring a person by careless, reckless, or negligent discharge of a firearm. The Court found that the defendant was entitled to an instruction on negligent discharge.

The separation of cognate and necessarily included offenses developed in order to expand the common-law definition of lesser included offenses.

> The common-law definition of lesser included offenses is that the lesser must be such that it is impossible to commit the greater without first having committed the lesser. 4 Wharton, Criminal Law and Procedure, § 1799. This definition includes only *necessarily* included lesser offenses. This definition, however, is generally conceded to be unduly restrictive, and thus most jurisdictions, including Michigan, have statutes that are broadly construed to permit conviction of "cognate" or allied offenses of the same nature, under a sufficient charge. These lesser offenses are related and hence "cognate" in the sense that they share several elements, and are of the same class or category, but may contain some elements not found in the higher offense. [395 Mich 387. Emphasis in original.]

Although recognition of a necessarily included offense is fairly simple, cognate lesser offenses can be more difficult. The Court looked to *Paterno v*

*Lyons,* 334 US 314; 68 S Ct 1044; 92 L Ed 1409 (1948), for due process guidance. The United States Supreme Court held that due process notice requirements were satisfied if the greater charged crime and the lesser included offense were of the same or overlapping nature. Thus, the Court stated:

> If the lesser offense is of the same class or category, or closely related to the originally charged offense, so as to provide fair notice to the defendant that he will be required to defend against it, the lesser offense is or may be included within the greater. [395 Mich 388.]

While reckless discharge of a firearm is not *always* a lesser included offense of second-degree murder, it may be, as it was under the facts in *Jones.*

> Analysis of the offense charged (second-degree murder), and the lesser offense on which instruction was requested (careless, reckless, or negligent discharge of a firearm causing death), demonstrates the overlapping of certain elements and common statutory purpose. The common purpose is the protection against killing or injury to the person. The overlapping elements relate first to a "reckless" state of mind concerning damage to human life and secondly to an activity or intended activity to kill or injure a person. Both of these overlapping elements relate to the common purpose of the statutes, *i.e.,* to protect against killing or injury to the person. The offenses are cognate; the elements shared by the two offenses coincide in the harm to the societal interest to be protected. [*Id.,* 389-390.]

Thus, the lesser offense of reckless discharge was held to be an included offense because it was cognate. However, the inquiry does not end here;

it remains to be determined whether the judge must instruct the jury on the cognate offense. It is the evidence presented at trial in each case which determines whether the court has a duty to instruct on cognate lesser included offenses.

In *People v Kamin,* 405 Mich 482, 493; 275 NW2d 777 (1979), the Court made clear in which cases the evidence needs to be reviewed when considering an instruction on a lesser included offense.

> The automatic instruction rule for necessarily lesser included offenses removed the need for the trial judges to review the record in order to determine whether or not there is evidence to support a verdict on the lesser offense. Review of the record for evidentiary support is now in order only when the defense requests that the jury be instructed on a cognate lesser included offense.

This is referred to as the *Kamin* "automatic instruction rule," although the case was granted primarily to decide the retroactivity of *Jones, supra.*[3]

Thus, when the lesser offense is necessarily in-

---

[3] In *People v Ross, supra,* 593, n 4, the Court of Appeals provided an historical perspective on the effect of *Jones* and *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975).

It is in the area of determining when the evidence adduced at trial supports a conviction of a lesser included offense that *Chamblis, supra,* and *Ora Jones, supra,* appear to have changed the rule of law formerly followed in this state. Prior to *Chamblis* and *Ora Jones* it was generally recognized that evidence supporting a greater offense would *not* always support a lesser offense even if the lesser offense were of the genre described in *Ora Jones* as "necessarily included." If the evidence was consistent only with a verdict of guilty of the charged offense or not guilty it was not error for the trial court to refuse to instruct even on a necessarily included lesser offense. *See People v Hearn,* 354 Mich 468; 93 NW2d 302 (1958), *People v Utter,* 217 Mich 74; 185 NW 830 (1921), *People v Repke,* 103 Mich 459; 61 NW 861 (1895), *People v Cardigan,* 41 Mich App 629; 200 NW2d 446 (1972). *See, also, People v Gregory Thomas,* 38 Mich

cluded, rather than cognate, the evidence will always support the lesser offense if it supports the greater. However, cognate offenses require the evidence in each particular trial to be examined to determine whether the specific evidence adduced would support a conviction of the requested lesser offense. *People v Jones* and *People v Kamin, supra.*

The lesser included offense instruction scheme developed by the Court is more protective of defendants than a significant number of states and the federal system.[4] The federal courts, by contrast, do not recognize cognate lesser included offenses. FR Crim P 31(c) limits instructions in federal criminal prosecutions to necessarily included offenses only.[5] Indeed, the federal standard is further restrictive by requiring that the evidence must permit a jury rationally to convict of the lesser offense and *acquit* of the offense charged. *Keeble v United States,* 412 US 205; 93 S Ct 1993; 36 L Ed 2d 844 (1973). A Michigan defendant may request and receive necessarily included offense instructions

---

App 777, 779; 197 NW2d 97 (1972), in which Judge Levin stated the rule as follows:

"The rule is that entitlement to a charge on a lesser included offense largely turns on whether, on view of the evidence favorable to the defendant, there is evidence which would justify the jury in concluding that the greater offense was *not* committed and a lesser included offense was committed." (Emphasis supplied.)

This rule was expressly repudiated in *Chamblis.*

[4] See anno: *Lesser-related state offense instructions: Modern status,* 50 ALR4th 1081.

[5]

Rule 31. Verdict

(c) Conviction of less offense. The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense. [See 11 ALR Fed 173, for what constitutes a lesser included offense under Rule 31(c).]

without regard to the evidence, and a cognate lesser included offense instruction if the evidence adduced at trial would support a conviction of the requested lesser offense.

### B. MICHIGAN HARMLESS ERROR DOCTRINE

#### 1. STATUTORY SOURCES

The concept of harmless error for trial imperfections is affirmatively codified in our jurisprudence. MCR 2.613(A) provides:

> Harmless Error. An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in *anything done or omitted by the court* or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice. [Emphasis added.]

The Code of Criminal Procedure provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, *on the ground of misdirection of the jury,* or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice. [MCL 769.26; MSA 28.1096. Emphasis added.]

#### 2. ROSS

In *People v Ross, supra,* the Court of Appeals advanced a harmless error analysis for refusal to

instruct on a cognate lesser offense. The Court employed a different analysis for the refused instruction of a necessarily included lesser offense, however. Because the cases sub judice present only cognate lesser included offenses, we do not elaborate on the second analysis.

Defendant Ross was charged, in a two-count information, with assault with intent to murder and assault with intent to rape. On count one, the trial court instructed the jury that its verdict could be guilty of assault with intent to murder, guilty of assault with intent to do great bodily harm less than murder, guilty of felonious assault, or not guilty. On count two, the court instructed the jury that it could find verdicts of guilty of assault with intent to rape or not guilty. However, the court refused defendant's requests to instruct the jury on assault and battery (count one) and attempted rape (count two). Ross was convicted of both charged offenses.

The Court of Appeals engaged the analysis articulated by this Court in *Jones* and *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975), in order to determine the class of lesser offense. As to count one, assault and battery was found to not be an offense necessarily included in assault with intent to murder. *Jones, supra; People v Ray,* 56 Mich App 610; 224 NW2d 735 (1974); *People v Stram,* 40 Mich App 249; 198 NW2d 753 (1972). Hence, because this was a cognate offense, the evidence was examined. The evidentiary inquiry required the Court to ask: "[I]f [Ross] had been originally charged with assault and battery, would the evidence adduced at trial have supported a guilty verdict?" *Ross, supra,* 592. The Court agreed that

the evidence would have been sufficient. Therefore, the requested instruction should have been given.

Rather than holding this error to require reversal, the Court of Appeals reasoned that the refusal was harmless, that is, the jury had sufficient alternatives with which to express doubts about the defendant's guilt of the charged offense of assault with intent to murder.

> Reversal is not required, however, for two reasons. First, the defendant was convicted of the charged offense even though instructions were given on the two lesser offenses of assault with intent to do great bodily harm less than murder and felonious assault. If the jury had doubts about defendant's guilt of the charged offense but believed him to be guilty of some wrongdoing they could have found him guilty of one of the lesser offenses. They did not do so. We must conclude, therefore, that the jury had no reasonable doubt as to the defendant's guilt of the charged offense. Second, on retrial the jury could not be instructed any differently than they were at the original trial because of the rule announced in *Chamblis, supra,* prohibiting instruction on lesser included offenses for which the maximum allowable incarceration period is one year or less in any case in which the charged offense is punishable by incarceration for more than two years.
>
> Defendant's conviction of the offense of assault with intent to murder is therefore affirmed. [*Ross, supra,* 592-593.]

The Court of Appeals second reason, based on *Chamblis, supra,* has since been invalidated by this Court;[6] the validity of the first reason remains to be decided in this opinion.[7]

This Court's first consideration of *Ross* was in

---

[6] *People v Miller,* 406 Mich 244; 277 NW2d 630 (1979); *People v Stephens,* 416 Mich 252; 330 NW2d 675 (1982).

[7] The *Ross* analysis has remained alive in Court of Appeals deci-

*People v Richardson,* 409 Mich 126; 283 NW2d 332 (1980). Although the decision to grant leave to appeal was founded, in part, on the Court of Appeals application of harmless error, the opinion did not ultimately rely on *Ross* for its holding.[8]

Defendant Richardson shot and killed a man with a rifle after fighting with the victim's brother. The defendant testified that he and the victim had struggled with the rifle and the shooting was accidental. The prosecutor argued that the shooting was premeditated.

At the conclusion of the proofs, defendant requested the trial court to instruct the jury on first-degree murder only. The judge denied the request and stated that he would instruct on both first- and second-degree murder, at least. In response, the defendant requested that the court instruct the jury on the lesser offenses of manslaughter and reckless use of a firearm causing death or injury. The judge instructed on first- and second-degree murder and voluntary manslaughter, but refused to instruct on reckless use of a firearm reasoning that the information did not encompass

---

sions. An example of its application may be found in *People v Stein,* 90 Mich App 159; 282 NW2d 269 (1979). But see n 1.

[8] We granted leave to appeal in this case to consider a number of issues, including whether a trial judge's refusal to give a properly requested lesser included offense instruction is harmless error in a case where the jury was instructed on some other lesser offenses and returned a verdict of guilty on a higher, charged offense.

Our review of the record reveals two errors which require reversal of defendant's conviction and remand for a new trial. First, on the record evidence in this case, the defendant was entitled to have the jury instructed on the lesser offenses of involuntary manslaughter and reckless use of a firearm causing death or injury. The refusal to give instructions on those properly requested and applicable lesser offenses was, in this case, prejudicial error. [409 Mich 130. Citations omitted.]

that offense. The jury returned a verdict of guilty of first-degree murder.

The Court began its review with a consideration of *Jones, supra,* reasoning that an instruction on the lesser included offenses was not mandated without a review of the evidence because involuntary manslaughter and reckless use of firearms are not *necessarily* included offenses. As cognate lesser included offenses, this Court undertook a determination "whether evidence was presented which would have supported conviction of either of the lesser offenses of involuntary manslaughter or reckless use of a firearm." 409 Mich 135.

A review of the evidence convinced us that a conviction of involuntary manslaughter would have been supported. Hence, it was error to refuse an instruction on the cognate-lesser offense, voluntary manslaughter. We also considered the evidence to have been sufficient to convict of the lesser offense of reckless use of a firearm; thus, that refusal was also error.

The Court of Appeals had come to the same conclusion, but had relied on the *Ross* harmless error analysis.

> Evidence was adduced in this case which would have supported a finding of involuntary manslaughter or reckless use of a firearm. *People v Chamblis, supra,* at 423. Therefore, instructions on these lesser offenses should have been given. However, given that the jury refused to convict on the lesser offenses of second-degree murder or voluntary manslaughter, for which instructions were provided, we do not believe the error, under *Chamblis,* is reversible. *People v Herbert Ross,* 73 Mich App 588; 252 NW2d 526 (1977).
>
> In *Ross,* on finding no reversible error, we made the following comment:
>
> "If the jury had doubts about defendant's guilt of the charged offense but believed him to be

guilty of some wrongdoing they could have found him guilty of one of the lesser offenses. They did not do so. We must conclude, therefore, that the jury had no reasonable doubt as to the defendant's guilt of the charged offense."

We see no reason to view the present case differently, and so decline to reverse here. [77 Mich App 411, 421-422; 258 NW2d 741 (1977).]

This Court's consideration began with an acknowledgment that the general harmless error doctrine is stated both in court rule and statute. A distillation of the rule, statute, and case law produces a fairly simple, if broad, rule: "[A]ppellate courts should not reverse a conviction unless the error was prejudicial." *People v Robinson,* 386 Mich 551, 562; 194 NW2d 709 (1972). However, before the Court engaged in a harmless error application, it was decided that

[i]n the present case, we find it unnecessary to decide whether the harmless error principle can be applied generally to the kind of instructional error that occurred below, because even if such error could be harmless in some cases, it clearly was prejudicial here. [409 Mich 140.]

The defendant's theory was that he did not intend any of his acts to produce serious bodily harm. Hence, the effect of the trial judge's refusal to instruct on involuntary manslaughter and reckless use of a firearm, was considered by the Court to be prejudicial because it foreclosed the jury's option to convict the defendant in accordance with his own testimony, evidence, and theory. Thus, the Court's decision purportedly was made independently of the *Ross* harmless error analysis.[9]

---

[9] To the extent that *Richardson* is inconsistent with the *Ross* harmless error approach and its application in this case, it is modified.

The next opportunity this Court had to consider harmless error in a refusal to instruct on a lesser included offense was *People v Rochowiak,* 416 Mich 235; 330 NW2d 669 (1982). This case produced an equal division with regard to substance and a concurrence in the result only. Two justices did not participate.

Police officers found a body in an automobile in Rouge Park at 8:15 A.M. on July 31, 1976. Deceased had been killed by a shotgun blast. The passenger side window was shattered.

Defendant's neighbor testified that at about 7:30 A.M. on July 31 the defendant had telephoned him and then arrived at the neighbor's house a minute later. He was bleeding and bruised, so the neighbor drove him to the hospital. During the drive, the defendant made statements; such as, he had "killed a queer" and "[m]aybe that will keep the rest of them from coming in there." He explained his own wounds as a result of holding the gun too close to his mouth. Defendant made other incriminating statements to the neighbor and to the police, and a song or poem, in which he confessed, was found at the hospital.

Rochowiak was charged with first-degree murder. However, the charge was reduced to second-degree murder at the preliminary examination.

The defendant's defense was that he was under the influence of drugs and had diminished capacity at the time of the killing and at the time he made the incriminating statements.

At the close of the trial, defendant requested that the judge instruct the jury on reckless use of a firearm. *Jones, supra.* The judge refused to give the instruction, ruling that the evidence would not support a conviction of this lesser offense. The trial court did instruct on second-degree murder and involuntary manslaughter. Defendant was

convicted of second-degree murder; the Court of Appeals affirmed.

The lead opinion for reversal, joined by one justice, acknowledged reckless use of a firearm as a cognate lesser included offense of second-degree murder, and, although the evidence most strongly suggested intent, it was determined that the evidence in the case would also support a conviction of reckless use. The people argued a harmless error application, and the following summary of *Ross* was given:

> *Ross* holds that the failure to give a requested instruction on a lesser offense is not cause for reversal if the jury was instructed on another lesser offense and nevertheless returned a verdict of guilty of the greater offense. The rationale of *Ross* is that a jury which has been given and has rejected the option of compromising on an intermediate verdict (between guilty of the greater offense and not guilty) would, in all probability, also have rejected the option of finding the defendant guilty of an even lesser charge. [416 Mich 244.]

The *Rochowiak* opinion also distinguished *Richardson, supra,* where the jury was given an instruction consistent with the theory of his case, i.e., involuntary manslaughter.

> The Court is thus again called upon to address the question of the validity of the rationale of *Ross* and its proper scope. [416 Mich 245.]

Rochowiak's basic argument was that the harmless error doctrine would dilute the jury's authority. That is, in order for the jury to work as factfinder, it must be fully aware of possible verdicts.

The people argued that it "strains credulity" to say that a jury which rejects a finding of gross negligence, wilfulness, and wantonness in favor of a finding of an intentional act, would have found the acts careless and reckless if given the opportunity. In *Rochowiak,* the jury was not interested in leniency; it rejected involuntary manslaughter as a verdict between murder and not guilty.

The opinion of the Court founded its decision on possible reactions by the jury to the omitted lesser included offense instruction.

> While the arguments that it is highly unlikely that the jury would have convicted of reckless use and that Rochowiak's theory of the case was presented to and rejected by the jury are most compelling, we are persuaded that had the jury been instructed on reckless use, in addition to involuntary manslaughter, *it might have better understood Rochowiak's theory* and have returned a verdict of guilty of involuntary manslaughter.
>
> \* \* \*
>
> Rochowiak argues, and we are persuaded, that had the jurors been apprised of the third possibility on the spectrum of criminal responsibility, they might have assessed his argument in a different light and with a better understanding of the gradations of responsibility in the law of homicide. Rather than viewing a verdict of guilty of involuntary manslaughter as one which would minimize the heinous nature of his act, they may have ascribed greater importance to the language "wilful and wanton" as a grave and guilty state of mind distinguishing Rochowiak's actions from that of a careless and reckless person, and have *settled upon the intermediate level of criminal responsibility.* [416 Mich 247-248. Emphasis added.]

Although the opinion was decided by finding the omitted instruction necessary for the jury's under-

standing of the theory of the case, it made observations on the harmless error rule:

As in *Richardson,* we do not hold that failure to give lesser offense instructions can never be harmless. The error may indeed be harmless in a case where it is clear that the jury was presented with a lesser offense or offenses consistent with the defendant's theory which was rejected, and made findings of fact, implicit in the verdict, which would preclude conviction of the charge upon which an instruction was refused, or where the differences between the various offenses concern factual elements, the existence of a weapon (armed or non-armed), the completion of the offense (attempt), the use of force (larceny or robbery) and not the state of mind of the defendant (murder, manslaughter, reckless use; assault with intent to murder, with intent to commit great bodily harm less than murder, felonious assault). [416 Mich 248-249.]

Thus, although the harmless error doctrine was acknowledged, it was neither explicitly applied nor rejected.

The opinion for affirmance, also joined by one justice, found this approach "unsupportable." It stated that "the office of the lesser included offense instruction is to provide the jury a verdict option which is reasonably raised by the evidence," not "to enable the jury to [better] assess the defendant's argument":

As the Court points out, it is because the defendant's "state of mind" was primarily at issue in this case that the question arises whether a reckless use of firearm instruction should have been given.

When the jury rejected the theory that the defendant was guilty of involuntary manslaughter,

but instead was guilty of murder in the second degree, it refused to find the defendant's act grossly negligent and found it instead to be intentional, with an object to kill, or with an indifference to the result knowing that death was likely.

In my judgment, it defies logic and common sense to suggest that, in a case in which the jury rejected the theory that the defendant was merely grossly negligent, it is reversible error to fail to provide them the option of finding him merely reckless and negligent. [416 Mich 250-251.]

The dissent would have found harmless error.

Hence, this Court has passively acknowledged the *Ross* harmless error analysis, and, in a case with limited precedential value,[10] has offered qualifications for its use. However, the analysis has never been affirmatively applied or expressly rejected.

### III. APPLICATION AND RESOLUTION

#### A. PEOPLE v EDWARDS

Defendant Edwards argues that the trial court and Court of Appeals were incorrect in their conclusions that the evidence at trial did not support the requested instruction on the lesser included offense of involuntary manslaughter. The Court of Appeals found that the elements of involuntary manslaughter preclude a conviction for that offense if the act causing death amounts to a felony. We do not rest our holding upon the finding of a felony, as did the Court of Appeals, but on the uncontroverted evidence of an unlawful act which

---

[10] See *Negri v Slotkin,* 397 Mich 105; 244 NW2d 98 (1976), which held that a decision by this Court in which no majority of the justices participating agree as to the reasoning is not an authoritative interpretation binding on the Court under the doctrine of stare decisis.

naturally tends to cause death or bodily harm.[11]
Because we discern no evidence adduced at trial
which would support a conviction of involuntary
manslaughter, we affirm the Court of Appeals
holding that Edwards was not entitled to an in-
struction on the lesser included offense of man-
slaughter. We find Edwards' argument—the fact
that the fire started on the porch was uninten-
tional and therefore supplied a sufficient inference
of gross negligence—to be ill-conceived in light of
the elements of involuntary manslaughter. We
also find that the jury was properly instructed on
the question of malice.

As discussed above, lesser included offense in-
structions require a distinction as to type. *Jones,
supra.* This Court has held that manslaughter is
not a necessarily included offense of murder, but
may be an included offense if the evidence adduced
at trial would support a guilty verdict.[12] *People v
Van Wyck,* 402 Mich 266; 262 NW2d 638 (1978).
See also *People v Carter,* 395 Mich 434; 236 NW2d
500 (1975); *People v Paul,* 395 Mich 444; 236
NW2d 486 (1975). However, a review of the evi-
dence must be preceded by an examination of the
elements of involuntary manslaughter.

The Court of Appeals utilized the definition of

---

[11] The defendant has raised the issue whether the negative element
of the absence of a felony remains a requirement for involuntary
manslaughter in light of our decision in *People v Aaron,* 409 Mich
672; 299 NW2d 304 (1980), in which we held that a conviction for
felony murder requires more than the mere existence of a felony. We
need not reach that question in this case because the definition of
involuntary manslaughter relied upon by the Court of Appeals con-
tains two negative elements. "Involuntary manslaughter is the unin-
tentional killing of another without malice in (1) the commission of
some unlawful act not amounting to a felony *and* not naturally
tending to cause death or great bodily harm . . . ." Because setting
fire to a house in which residents are sleeping is an unlawful act
which naturally tends to cause death or great bodily harm, the
conduct in question could not satisfy the requirements for involuntary
manslaughter regardless of whether the unlawful act was a felony.

[12] See n 11.

the elements of involuntary manslaughter which has resurfaced in our opinions since 1923. Indeed, this definition was endorsed in the seminal case of *Jones, supra.*

> We agree with the trial court and conclude that the evidence introduced at trial simply did not support the requested instruction. Involuntary manslaughter is the unintentional killing of another without malice in (1) the commission of some *unlawful act not amounting to a felony* and not naturally tending to cause death or great bodily harm, or (2) the commission of some lawful act, negligently performed or (3) in the negligent omission to perform some legal duty. *People v Richardson,* 409 Mich 126, 135-136; 293 NW2d 332 (1980), citing *People v Townes,* 391 Mich 578, 590-591; 218 NW2d 136 (1974). See also *People v Ryczek,* 224 Mich 106, 110; 194 NW 609 (1923).

The Court of Appeals reasoned that only the first form of involuntary manslaughter applied to the facts of the case. The Court then reasoned that the conduct here, burning of a dwelling house, is a felony; hence, an instruction on involuntary manslaughter was not warranted. As noted above, the definition also requires the unlawful act to be of a type which does not naturally tend to cause death or great bodily harm. The conduct in this case—the burning of a dwelling house in which residents were sleeping—does naturally tend to cause death or great bodily harm. Thus, regardless of the statutory degree of severity of the conduct, the unlawful act in this case could not meet the definition of involuntary manslaughter.[13]

---

[13] We note that Michigan courts, ours included, have been less than precise in the use of language denoting voluntary or involuntary manslaughter. Although we accept, for this case, that involuntary manslaughter is a cognate lesser included offense of first-degree murder and second-degree murder, we observe that the precedents

Where the evidence suggests *only* that the criminal act naturally tends to cause death or great bodily harm, an instruction on the lesser included offense of involuntary manslaughter is simply not justified. This does not mean, however, that evidence which suggests an unlawful act naturally tending to cause death or great bodily harm categorically precludes an instruction on involuntary manslaughter. That possibility depends upon the evidence adduced at trial.

An example of trial evidence which could support both a felony murder instruction and an involuntary manslaughter instruction may be found in *People v Roeder,* 79 Mich App 595; 262 NW2d 872 (1977). The defendant was charged with two counts of felony murder in the death by fire of her two children. The victims were killed by a fire in the mobile home in which they were sleeping. An arson investigator testified that in his opinion the fire was started by someone piling up combustible material and lighting it. The defendant testified that she had emptied an ashtray into a wastebasket and that she had tried to rescue her children. The defendant's testimony tended to negate both malice and the existence of an act naturally tending to cause death or great bodily harm.

The offense of arson is defined as follows:

---

upon which this conclusion is built are primarily considerations of voluntary or statutory manslaughter. As we observed in *Jones, supra,* quoting *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974):

> "The elements of involuntary manslaughter, although not completely exclusive of those found in voluntary manslaughter are distinguishable in several respects. They define a crime that originates out of circumstances often quite different from those found in voluntary manslaughter and apply to a defendant who did not proceed with the intent to cause death or serious bodily injury." [395 Mich 392.]

Because this distinction was not at issue in this case, we do not pursue it here.

> Any person who wilfully or maliciously burns
> any dwelling house, either occupied or unoccupied,
> or the contents thereof, whether owned by himself
> or another, or any building within the curtilage of
> such dwelling house, or the contents thereof, shall
> be guilty of a felony, punishable by imprisonment
> in the state prison not more than 20 years. [MCL
> 750.72; MSA 28.267.]

Because the offense of arson requires a wilful or
malicious act, Ms. Roeder's testimony presented
evidence which would suggest that no arson oc-
curred.

Edwards argues that the location of the fire—the
porch—provides an inference upon which an invol-
untary manslaughter instruction may be founded.
Yet no evidence was presented which would sug-
gest that the fire was not wilfully set.[14] We agree,
however, that the location of the fire may be an
indication of lack of malice, i.e., it could be in-
ferred, with some imagination, that the fire was
set on the porch merely to frighten the occupants.
If the jury accepted this inference, then only a
conviction of arson could have been returned be-
cause it was instructed that a conviction of mur-
der, including felony murder, requires malice.
However, we do not agree that the location of the
fire presents evidence to support a lack of a wilful
or malicious act.

If our standard of evidence adduced at trial to
warrant an instruction on cognate lesser offenses
were based on "pure speculation," one could imag-
ine that Edwards stood on the porch and acciden-
tally dropped a lighted match. However, our stan-
dard involves a determination of whether the evi-

---

[14] There was no evidence tending to show, or basis in the evidence
for an inference, that the cause of the fire was an accident or
negligence.

dence would support a conviction on the requested cognate lesser included offense.

There must be some evidence on the record to support the elements of the requested lesser included (cognate) offense. Here, however, a disbelief of the evidence of an intentional firesetting leaves no evidence at all—only speculation.[15] This distinguishes our requirements for instructions on lesser included felonies from our requirements for lesser included misdemeanors and the federal system. See *People v Steele,* 429 Mich 13; 412 NW2d 206 (1987). However, in this case, there is no way of separating uncontested evidence of an intentional act of arson from a theory of unintentional death. Unlike *Roeder,* there simply is no evidence to support a conviction of manslaughter if Edwards had been charged originally with involuntary manslaughter. Cf. *post,* pp 489–490.

It has been suggested that a lesser included offense instruction should be given if it would help the jury understand the theory of the defendant's case, and increase the possibility of a compromise verdict;[16] however, we adhere to the standard articulated in *Jones, supra.*

Because the evidence in Edwards' trial would not support a conviction of involuntary manslaughter, we affirm the Court of Appeals conclusion that the instruction was not warranted. We agree with the United States Supreme Court that the cost of allowing instructions for lesser included offenses for which a defendant could not be convicted, would be a distortion of the factfinding process.

> The element [this] Court . . . found essential to a fair trial was not simply a lesser included offense

---

[15] See n 14.

[16] *People v Rochowiak, supra.*

instruction in the abstract, but the enhanced rationality and reliability the existence of the instruction introduced into the jury's deliberations. Where no lesser included offense exists, a lesser included offense instruction detracts from, rather than enhances, the rationality of the process. [*Spaziano v Florida,* 468 US 447, 455; 104 S Ct 3154; 82 L Ed 2d 340 (1984).]

For the reasons stated in its opinion, we also affirm the Court of Appeals finding that the jury was not improperly instructed on felony murder, and hold that the issue whether the defendant was convicted of first-degree premeditated murder was not properly preserved.

### B. PEOPLE v BEACH

We agree with the defendant's argument that there was sufficient evidence to warrant the lesser included offense instruction of conspiracy to commit larceny in a building, and find that the trial court and the Court of Appeals erred in rejecting this conclusion.

However, Beach was convicted of the charged greater offense of conspiracy to commit armed robbery. If the jury had doubts about her guilt of the charged offense, it could have found her guilty of the instructed lesser included offense of conspiracy to commit unarmed robbery. Because it did not do so, we can conclude that it had no reasonable doubts as to the defendant's guilt of conspiracy to commit armed robbery. Hence, we hold the error to be harmless.

In this case, we must determine exactly what lesser included offense instruction was requested before we can decide whether or not the request was warranted. The trial transcript discloses the following exchange:

*Mr. Heyboer:*

\* \* \*

Additionally, I requested a lesser offense of conspiracy to commit larceny in a building or some type of felony larceny and the court has also instructed us, in chambers, it would not be giving that instruction.

*The Court:* Do you have any response to his statement?

*Mr. Dean:* No, your Honor.

*The Court:* As to the request of the prosecutor for a larceny charge, since there are two counts in this case, count I being murder of the first degree and count II being conspiracy to commit robbery armed, I think it would be inconsistent and possibly prejudicial to include larceny in the first count since they did not allege it in the count of conspiracy. If this were solely a murder count of the first degree I would certainly consider that request and since I am not giving it to the prosecutor I will also not give the conspiracy to commit larceny charge to the Defendant in this case.

From the face of the record, only conspiracy to commit larceny in a building was specifically requested. We have consistently required that a party must inform the trial court of the exact lesser included offenses which are being requested. *People v Stephens,* 416 Mich 252; 330 NW2d 675 (1982); *People v Herbert Smith,* 396 Mich 362; 240 NW2d 245 (1976).

In *Stephens,* the Court reëvaluated the misdemeanor cutoff rule of *Chamblis, supra,* but also made an observation about lesser included offense instruction requests.

The first condition for a lesser included offense instruction is a proper request. This requirement is not novel or extraordinary; except for cases involving first-degree murder, see *People v Jen-*

*kins,* 395 Mich 440; 236 NW2d 503 (1975), the trial judge may, but need not, *sua sponte* instruct on lesser included offenses. *People v Henry,* 395 Mich 367; 236 NW2d 489 (1975); *People v Johnson,* 409 Mich 552, 562; 297 NW2d 115 (1980). However, the prosecutor or defense counsel must adequately apprise the trial judge of exactly what lesser included offenses are being requested; a general request for "the lesser included offense" will not suffice. *People v Herbert Smith,* 396 Mich 362; 240 NW2d 245 (1976). [416 Mich 261-262.]

*Smith* was decided on more general requests:

Smith was convicted of unarmed robbery. His attorney said, "I am asking the court to charge the lesser included offenses," without telling the judge what offenses he wished the jury instructed upon. The trial judge instructed the jury on only two possible verdicts, guilty as charged or not guilty. Smith now argues that the trial judge should have instructed on larceny from the person.

Haines was convicted of armed robbery. His attorney said, "We are requesting that the included offenses, that they be given," also without further elaboration. Haines now argues that the trial judge erred in not presenting unarmed robbery for the jury's consideration.

. . . The issue is not preserved, however, by a general request for an instruction on the "lesser included offenses." We have recognized that the trial judge must rely on requests from counsel in carrying out his responsibility to instruct the jury. *Henry, supra.* We must receive more assistance from counsel than a mere request for an instruction on lesser included offenses to make his failure to so instruct reversible error. [396 Mich 363-364.]

We find Beach's request for "some type of felony larceny" to be an improper general request. Thus, only conspiracy to commit larceny in a building was requested in this case.

Beach argues that larceny—of some form—is necessarily included in a charge of robbery, and, because larceny itself is an element of robbery, larceny is a necessarily included offense of robbery. We find this reasoning to be specious. In fact, only larceny from the person is necessarily included in robbery. It is precisely the differences between larceny from the person and larceny from a building which distinguishes them as necessarily or cognate lesser included offenses.[17] Because instruction on only conspiracy to commit larceny in a building was requested in this case, and conspiracy to commit larceny in a building is a cognate lesser included offense of conspiracy to commit armed robbery, a review of the evidence is necessary in order to determine whether the instruction should have been given to the jury.

[17] The essence of a necessarily included offense is that it is impossible to commit the greater offense without also committing the lesser. *Jones, supra.* A conspiracy to commit larceny *from the person* is necessarily included in a conspiracy to commit armed robbery. This was recognized in *People v Chamblis, supra,* 425.

> Robbery is committed only when there is larceny from the person, with the additional element of violence or intimidation. Perkins on Criminal Law (2d ed), pp 279, 281. We are committed to the view that the crime of larceny from the person embraces the taking of property in the possession and immediate presence of the victim. *People v Gould,* 384 Mich 71; 179 NW2d 617 (1970). If such taking be by force and threat of violence, it is robbery, and hence every robbery would necessarily include larceny from the person and every armed robbery would necessarily include both unarmed robbery and larceny from the person as lesser included offenses. "Without force" is the absence of an element in this context, it is not an additional element.

However, the Court's decision in *People v Kamin, supra,* found larceny from the person to be a *cognate* lesser included offense. We believe this was a mistake.

In *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980), decided one year after *Kamin,* the Court returned to the *Chamblis* conclusion that larceny from the person is *necessarily included in armed robbery.*

See also *People v Stein,* n 7 *supra,* holding larceny in a building to be a cognate lesser included offense of armed robbery.

Ms. Beach was charged in her second trial with first-degree felony murder and conspiracy to commit armed robbery. The jury was instructed on the lesser included offenses of attempted felony murder, second-degree murder, attempted second-degree murder, assault with intent to commit armed robbery, voluntary manslaughter, involuntary manslaughter, assault with intent to do great bodily harm less than murder, assault with a deadly weapon, and conspiracy to commit unarmed robbery. The court refused an instruction on conspiracy to commit larceny in a building.

The Court of Appeals majority was very brief in its discussion of the refusal to instruct on conspiracy to commit larceny in a building.

> Defendant also claims that the court erred in not giving a charge on a lesser included offense of conspiracy to commit larceny in a building.
>
> The court properly denied that request as the evidence did not support such a finding and where there is no evidence to support such a finding on a lesser included offense, defendant is not entitled to it.

Judge Hood dissented:

> The evidence in this case could have supported the lesser offense. Turner, the admitted killer, testified that he and defendant stole money from the decedent on an earlier occasion without using force, and that on that same night they discussed returning to decedent's home for the purpose of getting more money. Turner's testimony as to how they planned to get the money varied. At one point, for instance, he indicated that he and defendant considered the possibility of obtaining money in return for sexual favors. It is entirely possible that the jury could have concluded that there was

a conspiracy to steal, but that use of force was not a part of the agreement.

We agree with Judge HOOD that in addition to the evidence of conspiracy to rob, there was evidence which would support an instruction on conspiracy to commit larceny in a building when requested.

We find the following testimony to be important in considering whether the evidence would have supported a conviction on conspiracy to commit larceny in a building.

Turner testified that Beach had committed larceny in a building on a prior occasion by taking money from the same victim's wallet. He also testified that they discussed returning:

> *Q.* Did you have any conversation when you went home about perhaps going back and seeing Mr. Dunbar again?
> *A.* Yes, we did.
>
> \* \* \*
>
> *Q.* What were these conversations about?
> *A.* Going back and ripping the man off.
> *Q.* Did you plan to go back . . . ?
> *A.* We talked about it.

Turner testified to the following about the plan for returning to Dunbar's:

> *Q.* It's your plan, if I understand your former testimony, it's your plan to wait for Mr. Dunbar because he had a lot of money on him the previous week, so you are hoping he will have a lot of money on him this time?
> *A.* True.
> *Q.* What exactly was your plan once he showed up? What were you going to do? Walk up to him, say I've got a woman, follow him; what was your plan?

*A.* See could we proposition him some type of way of getting money from him.

*Q.* Proposition him in what way?

*A.* Whatever way possible.

*Q.* You hadn't thought ahead of any line you were going to give him, story you were going to give him?

*A.* Not exactly.

*Q.* How about inexactly?

*A.* I'd say so.

*Q.* Inexactly what line had you thought of?

*A.* Same, sexual favors or whatever.

As for the circumstances of the stabbing, Turner testified that he approached Dunbar, but that Dunbar would not speak to him. However, he allowed Beach to sit in his car and talk and then accompanied her into his house. Turner then followed them with their eighteen-month-old child into the house where they drank beer and talked. Dunbar suggested that he might overlook the theft if Beach were to offer sexual favors.

*Q.* Then what did he do?

*A.* He mentioned, he got mad and said that he'd put a contract on us.

*Q.* What did you do at this point?

*A.* Went to the bathroom.

*Q.* Now, what happened while you were in the bathroom? What were you doing? Thinking? Were you in there long?

*A.* I was in there long, I thought about Mr. Dunbar.

*Q.* Can you kind of give the jury an idea what kind of things you may have been thinking about at this point?

*A.* That I had to do something. I wasn't going to let him put no contract on me or Marian.

*Q.* So, what happened then? Did you come out of the bathroom?

*A.* Yes.

*Q.* Now, where were Marian and Sidney when you came out?

*A.* Both sitting down.

*Q.* In what room would this be?

*A.* Living room.

*Q.* What did you do at that point?

*A.* I pulled the knife on Mr. Dunbar.

*Q.* When you pulled the knife, what did you say?

*A.* I said, you're not going to put a contract on us.

*Q.* What happened next?

*A.* He jumped at me. I cut his hand.

Additional testimony revealed the following:

*Q.* At that point you decided this man had to die?

*A.* Something had to be did [sic]. One way or the other the problem had to be solved before we left the house.

*Q.* And the problem was Mr. Dunbar?

*A.* Yes.

*Q.* And the problem was he might tell someone, take a contract out on Jack Turner?

*A.* Yes.

*Q.* The only way to stop "the problem" was to kill him?

*A.* No, that wasn't the only solution, he could have been reimbursed and solved the solution right there or a lot of things could have happened.

* * *

*Q.* But if Mr. Dunbar hadn't mentioned contract it is very possible nothing would have happened that night?

*A.* Possible, yes.

As to the actual knifing, Turner testified:

*Q.* The occurrence, the knifing, now you have

said that you started, you pulled out your knife, your butcher knife?

*A.* Right.

*Q.* And you cut Mr. Dunbar's hand?

*A.* Right.

*Q.* What was your intention right at that point?

*A.* I don't even know.

*Q.* You don't know?

*A.* No.

Dr. Max Kopp, the medical examiner, testified that he could not tell if the wounds inflicted were from two different blades.

Turner testified that after the struggle and killing they left the house and then returned later to remove fingerprints.

This testimony does not lead us to the undisputed conclusion that Turner and Beach planned only to rob and murder Dunbar. Contradictions within Turner's testimony suggest that the killing may not have been planned or anticipated and that Beach may have conspired to commit a larceny, similar to the prior incident. Unlike the federal test for necessarily included offenses or the Michigan test for lesser included misdemeanors, acquittal on the greater charge is not a necessary condition for instruction on the lesser. Cf. *People v Steele, supra.*

There is a substantial distinction between the evidence in *Edwards* and the evidence in *Beach.* In *Beach,* evidence was given that she had, on a prior occasion, committed larceny from a building from the same victim. There was evidence which could support a conclusion that a similar attempt was to be made on the second occasion. Also, the evidence of the circumstances surrounding the killing was not such as to completely exclude the theory that Beach had conspired to commit larceny in a build-

ing. In *Edwards,* there simply was no evidence on
the record which would have supported a convic-
tion of involuntary manslaughter.

The case was built on accomplice Turner's testi-
mony. His account of the agreement to go to the
victim's house and the varying nature of his testi-
mony provided enough evidence to support the
cognate offense. The jury could have disbelieved
that part of his testimony regarding a plan to use
weapons and force, especially in view of the evi-
dence which would indicate that use of force was
considered, for the first time, in response to the
prospect of Dunbar arranging a "contract." The
quoted passage from Judge HOOD's dissent recog-
nized that the possession of weapons did not neces-
sarily mandate force. Accordingly, we find that
though Beach had only an alibi defense, Turner's
testimony varied. This differs from our conclusion
in *Edwards,* where there was no testimony by the
defendant, but the other testimony would not al-
low any other interpretation.

Because the instruction should have been given,
upon the basis of the state of the record, we are
presented with the decision whether or not to
conclude that this omission was harmless error. To
apply the reasoning of *Ross:* Beach was convicted
of the greater charged offense of conspiracy to
commit armed robbery. If the jury had doubts
about her guilt of the charged offense or if it
concluded that the defendant was not planning to
use force, it could have and undoubtedly would
have, found her guilty of the instructed lesser
included offense of conspiracy to commit unarmed
robbery, which would represent a lesser use of
force. Because it did not do so, we can conclude
that it had no reasonable doubt as to the defen-
dant's guilt of conspiracy to commit armed rob-
bery. We believe that the jury's decision is a

reasonable indication that the failure to give an instruction on the lesser included offense of conspiracy to commit larceny in a building was not prejudicial to the defendant. We require a fair trial, not a perfect trial.[18]

The existence of an intermediate charge that was rejected by the jury does not, of course, automatically result in an application of the *Ross* analysis. For it to apply, the intermediate charge rejected by the jury would necessarily have to indicate a lack of likelihood that the jury would have adopted the lesser requested charge.

We note that our recent cases, which did not adopt or apply the harmless error analysis, are distinguishable. In *People v Richardson, supra,* the Court declined to apply a harmless error analysis because the refusal to instruct was reasoned to foreclose the jury's option to convict the defendant consistently with his own testimony, evidence, and theory. *Beach* differs because the defense theory was alibi, and no evidence to make a theory of larceny essential to the defense was provided, that is, there was no specific denial of the use of force. There was only an alibi defense and an inference built on a possibility that the jury might disbelieve part of Turner's testimony.

In *People v Rochowiak, supra,* the opinion of the Court offered qualifications regarding the finding of harmless error under such circumstances. Although we do not adopt the qualifications, we note that this case complies with the suggestions for finding harmless error.

As in *Richardson,* we do not hold that failure to

---

[18] See *Darden v Wainwright,* 477 US 168; 106 S Ct 2464; 91 L Ed 2d 144 (1986); *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968); *Lutwak v United States,* 344 US 604; 73 S Ct 481; 97 L Ed 593 (1953).

give lesser offense instructions can never be harm-
less. The error may indeed be harmless in a case
where it is clear that the jury was presented with
a lesser offense or offenses *consistent with the
defendant's theory* which was rejected, and made
findings of fact, implicit in the verdict, which
would preclude conviction of the charge upon
which an instruction was refused, or *where the
differences between the various offenses concern
factual elements, the existence of a weapon (armed
or non-armed),* the completion of the offense (at-
tempt), *the use of force (larceny or robbery)* and
not the state of mind of the defendant (murder,
manslaughter, reckless use; assault with intent to
murder, with intent to commit great bodily harm
less than murder, felonious assault). [416 Mich
248-249. Emphasis added.]

Implicit in the jury's verdict in the case sub judice
is a finding of a use of a weapon which indicates a
greater use of force than would be the case in
unarmed robbery.

An analysis of United States Supreme Court
decisions reveals a general unwillingness to find
error requiring reversal in a failure to instruct on
a lesser included offense except when, in a death
penalty case, a jury is given only the alternative of
conviction or acquittal. See *Spaziano v Florida,
supra; Beck v Alabama,* 447 US 625; 100 S Ct
2382; 65 L Ed 2d 392 (1980); *Hopper v Evans,* 456
US 605; 102 S Ct 2049; 72 L Ed 2d 367 (1982);
*Keeble v United States,* 412 US 205; 93 S Ct 1993;
36 L Ed 2d 844 (1973). Indeed, even in cases which
rise to constitutional levels, the United States
Supreme Court has recognized the importance of
harmless error.

"The harmless-error doctrine recognizes the
principle that the central purpose of a criminal

trial is to decide the factual question of the defendant's guilt or innocence, *United States v Nobles,* 422 US 225, 230 [95 S Ct 2160; 45 L Ed 2d 141] (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error. Cf. R. Traynor, The Riddle of Harmless Error 50 (1970) ('Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.')." *Delaware v Van Arsdall,* [475 US 673, 681; 106 S Ct 1431; 89 L Ed 2d 674 (1986)]. [Cited in *Rose v Clark,* 478 US 570, —; 106 S Ct 3101; 92 L Ed 2d 460, 470 (1986) (Harmless-error analysis held to apply to murder conviction where jury was unconstitutionally instructed that homicide was presumed to be malicious.).]

Michigan provides more opportunities for lesser included offense instructions than federal courts or the courts of a significant number of other states. The limited harmless error doctrine employed here does not create an unacceptable erosion of the ability of a defendant to have a jury consider lesser included offenses. Instead it preserves a conviction in spite of a harmless mistake, provided the jury had another lesser offense to consider.

Harmless error analysis, under these circumstances, effectuates a balance of justice; that is, a weighing of the conviction by the jury against judicially generated theories of possible harm to a defendant. Because this doctrine is limited to situations where the jury had the choice of a lesser offense and rejected it in favor of conviction of a higher offense, we believe the balance is just.

We find no error in the Court of Appeals analysis of the remaining issues and, accordingly, affirm Beach's conviction.

IV. CONCLUSION

In *People v Edwards,* we hold that the evidence adduced at trial was insufficient to warrant an instruction on the cognate lesser included offense of involuntary manslaughter, and affirm the Court of Appeals analysis of the remaining issues.

In *People v Beach,* we hold that the failure to instruct on the cognate lesser included offense of conspiracy to commit larceny in a building was error. However, because the jury rejected the lesser included offense of conspiracy to commit unarmed robbery and, instead, convicted of the charged greater offense of conspiracy to commit armed robbery, we hold this error to be harmless. We affirm the Court of Appeals analysis of the remaining issues.

RILEY, C.J., and LEVIN, CAVANAGH, and ARCHER, JJ., concurred with BRICKLEY, J.

BOYLE, J. I concur in the reasoning and result in part II, B, and in the result in part III, A and B, of the majority opinion. I therefore concur with the conclusion of the majority.

GRIFFIN, J., took no part in the decision of these cases.