# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SAMUEL SAMMY CUELLAR,

        Defendant-Appellant.

UNPUBLISHED
October 13, 2015

No. 319872
Saginaw Circuit Court
LC No. 13-038412-FC

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of armed robbery, MCL 750.529. The trial court sentenced him as a fourth habitual offender, MCL 769.12, to 25 to 50 years in prison, with credit for 295 days. We affirm his conviction and the trial court's scoring of his prior record variables (PRVs), but remand for consideration of his sentence in light of *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (Docket No. 149073, decided July 29, 2015).

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Dawn Smith and Courtney Clover were working at a Speedway gas station around 6:30 a.m., when a Hispanic man entered the store wearing a hooded sweatshirt (with the hood pulled up) and at least one black glove. He was carrying a pistol. He said, "this is a stickup, give me all your money." After taking the money from both registers, he left the store, turned to the right once he was outside, and got into a red Dodge pickup truck. Carrie Lockhart, a customer who was leaving the store as the armed robber entered, had been sitting in her car watching the robbery through the store's window. She followed the robber in her car west on King Road, but eventually lost him and returned to the Speedway to give the police a statement.

After speaking with Smith, Clover, and Lockhart, Sergeant Jeff Roberts of the Bridgeport Township Police Department radioed a description of the suspect as a Hispanic male driving a red Dodge pickup last seen heading westbound on King and then westbound on Williamson Road. Officer Todd Brow of the Buena Vista Police Department heard the description, saw a red Dodge pickup in that vicinity, and observed as it traveled northbound on Sheridan Avenue and turned into a church parking lot on the corner of Sheridan Avenue and Treanor Street. When Brow pulled his marked patrol car behind the truck and shined his lights on it, defendant got out of the truck and ran westbound behind the church and then northbound along Sheridan. Brow

-1-

pursued in his patrol car, while Deputy Adrian Wise of the Saginaw Sheriff's Department pursued on foot. Defendant was apprehended while attempting to climb an approximately four-foot high chain fence. Brow got out of his car, and both he and Wise told defendant numerous times to stop. When defendant was at the top of the fence attempting to climb over, Brow tased him, and defendant fell on the opposite side of the fence. Both officers jumped over the fence, and as they were attempting to subdue and handcuff defendant, $335 fell from underneath his clothes. The manager of the Speedway, Debra Sanchez (who was not present for the robbery) had determined that $340 was missing from the gas station. Other officers found a BB gun on the ground near the south side of the church. Brow brought defendant to the Speedway, where Smith, Clover, and Lockhart identified defendant as the armed robber. Defendant's vehicle was impounded and searched pursuant to a warrant. A hooded sweatshirt, a pair of black gloves, and a black stocking cap were seized from the truck.

At trial, defendant insisted that he had never been to that particular Speedway. He testified that, on the night in question, he had parked in the church parking lot to sell Vicodin pills and marijuana to his daughter's friend in an adjacent house, and to retrieve his grandson's BB gun from the friend's house. He said that, as he returned to his truck, Brow pulled into the church parking lot, and the first thing he thought of was getting rid of the Vicodin and marijuana he still had in his pocket. He said he dropped the BB gun, and when he was unable to avoid the lights of Brow's patrol car, he started running, attempted to climb a fence, and was tased in the back.

The jury convicted defendant as described above. This appeal followed.

## II. PROSECUTORIAL ERROR[1]

Defendant argues that the prosecution denied him a fair trial by insisting that he comment on the credibility of the prosecution's witnesses. Defendant also contends that his counsel performed deficiently when he failed to object to the prosecution's line of questions, and that his deficient performance prejudiced defendant. We disagree.

Defense counsel neither objected to the prosecution's questions nor requested a curative instruction; therefore, this issue is unpreserved. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Our review of unpreserved claims of prosecutorial error is limited to ascertaining whether there was plain error that affected substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Reversal is warranted only when plain error resulted in the conviction of an innocent person, or seriously affected the fairness, integrity, or public reputation of the proceedings. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272

---

[1] As this Court recently noted in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), although the term "prosecutorial misconduct" has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.'"

(2008). Because defendant did not move for a new trial or *Ginther*[2] hearing, our review of his claim of ineffective assistance of counsel is limited to errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

It is improper for a prosecutor to ask the defendant to comment on the credibility of prosecution witnesses, but such an error does not necessarily warrant reversal. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985); *People v Knapp*, 244 Mich App 361, 384; 624 NW2d 227 (2001). Where a defendant deals well with the questions and defense counsel does not raise a timely objection that could preclude such further questioning or obtain a cautionary instruction, reversal is not warranted. *Buckey*, 424 Mich at 17-18.

Defendant bases his claim on the following exchange during his cross-examination by the prosecutor:

> *Q.* [Prosecuting attorney] Okay. It's your testimony you were never in your truck when the police saw you?
>
> *A.* [Defendant] Yes.
>
> *Q.* And the police never saw you driving?
>
> *A.* That is correct.
>
> *Q.* So the police are either mistaken or lying when they say that?
>
> *A.* Yes.
>
> *Q.* It's your testimony that you were never at the Speedway there at Dixie and King?
>
> *A.* Yes, it is.
>
> *Q.* So Ms. Clover would either be mistaken or lying in her identification of you?
>
> *A.* Yes.
>
> *Q.* Ms. Smith would either be mistaken or lying in her identification of you?
>
> *A.* Yes. I mean I have a big nose—
>
> *Q.* And the other witness, Ms. Lockhart, she would either be lying or mistaken in her identification of you?

---

[2] *People v Ginther*, 390 Mich 436, 441-443; 212 NW2d 922 (1973).

*A.* Yes.

*Q.* It's your testimony that you had how much money on you?

*A.* I had, I'd say about $405 altogether.

*Q.* Okay. And you heard testimony of the police officers that they found $335 on you, correct?

*A.* Yes. It was more than that.

*Q.* So their testimony, they would either be mistaken or lying in that?

*A.* Of course.

\* \* \*

*Q.* In fact, you told this jury that the police never had a search warrant, correct?

*A.* I blurted that out yesterday I believe.

*Q.* You were wrong about that, weren't you?

*A.* Well, they didn't have a search warrant when I was in the back seat of the police car when, they were going through my car; that is the reason why I blurted it out.

*Q.* So they were lying when they said they were waiting for the search warrant?

*A.* The search warrant was published about two days after the fact.

*Q.* So everybody is either mistaken or lying and you're telling the truth?

*A.* Well, look at the facts, look at the exhibits. They tell you the truth.

These are the same type of questions that our Supreme Court found to be improper in *Buckey*, and we are therefore compelled to conclude that the prosecutor similarly erred in this case by asking defendant to comment on the credibility of prosecution witnesses. However, as was also found in *Buckey*, the error does not warrant reversal because defendant handled the questions well, at least as well as the defendant did in *Buckey*. *Id*. at 17. Defendant testified that he had never been to the particular Speedway station, that the police had violated several of his rights, including seizing items from his truck without his permission and without a search warrant, and that he had more than $335 in his pocket. In responding to the prosecutor's questions, defendant asserted unequivocally what his testimony on direct examination had only implied, i.e., that the police committed multiple errors, the witnesses were mistaken in their identification, and the truth could be discerned from careful consideration of the physical evidence. Although the prosecution's questions were inappropriate, we find that defendant

-4-

handled the questions well and no plain error occurred that affected his substantial rights. *Id*. at 17-18; *Brown*, 279 Mich App at 134.

We also disagree with defendant's claim that his trial counsel performed deficiently and that defendant was prejudiced thereby. It is strongly presumed that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *People v Vaughn*, 491 Mich 642, 670; 821 N2d 288 (2012). When reviewing defense counsel's performance, the reviewing court must first objectively "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed2d 674 (1984). Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Vaughn*, 491 Mich at 669 (quotation marks and citation omitted). The defendant must establish both prongs of this test to prevail on his claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). In addition, "to persuade a reviewing court that counsel was ineffective, a defendant must also overcome the presumption that the challenged action was trial strategy." *Id*.

In this case, defendant has not overcome the presumption that defense counsel's failure to object to the prosecution's line of questioning was trial strategy. Defendant testified that he had never been to the Speedway and that the police had seized items from his truck without a warrant, and implied that the officers had not turned over all the money defendant had on his person at the time of his arrest. By refraining from objecting to the prosecution's line of questions regarding the credibility of the identification witnesses and the police, defense counsel provided defendant the opportunity to reiterate his testimony in a more pointed way. Defense counsel has wide discretion as to matters of trial strategy. *Heft*, 299 Mich App at 83, and we will not substitute our judgment for that of counsel regarding matters of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Consequently, defendant has failed to meet his heavy burden of proving that defense counsel's performance was deficient. *Strickland*, 466 US at 690.

Even if defendant had met his burden to prove that defense counsel's performance was deficient, defendant cannot show that he was prejudiced by that performance. Three eyewitnesses to the armed robbery identified defendant as the perpetrator, police found items in defendant's truck similar to those used in the robbery, defendant initially fled from police, and he had $335 when he was arrested, within five dollars of the amount of money determined to have been taken in the robbery. Defendant is entitled to a fair trial, not necessarily a perfect one. *People v Beach*, 429 Mich 450, 491; 418 NW2d 861 (1988). Because the prosecution did not commit prosecutorial error warranting reversal, and defense counsel did not perform deficiently, we conclude that defendant was not denied a fair trial. *Id*.

### III. STANDARD 4 ISSUES

Defendant raises several other claims of prosecutorial error in a Standard 4 brief,[3] none of which have merit. The gist of defendant's claims is that the prosecutor misled the jury by means of the questions he asked or the statements he made during opening statement and closing argument. Our review of the record convinces us that the prosecution did not commit the errors charged to it by defendant. Moreover, the trial court specifically instructed the jury that the attorneys' questions and opening statement and closing argument were not evidence and that, during its deliberations, the jury should consider only the evidence properly admitted in the case. Because jurors are presumed to have followed their instructions, *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009), it may be presumed that they did not treat the prosecutor's statements or questions as evidence, and therefore were not misled by them. Furthermore, because defense counsel is not required to raise meritless objections, *Knapp*, 244 Mich App at 386, we find that defense counsel did not perform below a minimum level of competence, *Strickland*, 466 US at 690, by failing to make the objections recommended by defendant. Consequently, defendant's constitutionally guaranteed right to effective assistance of counsel, US Const, Am VI, was not violated. *Id*. at 688.

### IV. PRIOR RECORD VARIABLES

Defendant argues that the trial court erred when scoring his PRVs at sentencing, because it should have found that the time between his discharge date for his most recent criminal conviction and his commission of the instant offense was more than 10 years. We disagree. We review a circuit court's findings of fact for clear error, and to see that they are supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The interpretation and application of the statutory sentencing guidelines are legal questions subject to de novo review. *People v Cannon*, 481 Mich 152, 156; 749 NW2d 257 (2008); *People v Crews*, 299 Mich App 381, 387; 829 NW2d 898 (2013). In construing the statutory sentencing guidelines, a court must discern and give effect to the Legislature's intent. The statutory language should be given its plain meaning, and construed in context. *People v Libbett*, 251 Mich App 353, 365-366; 650 NW2d 407 (2002). "Where possible, statutes must be given a reasonable interpretation and be so construed as not to lead to absurd consequences." *People v Powell*, 280 Mich 699, 703; 274 NW 372 (1937).

The trial court assigned a total of 90 points to PRVs 1, 2, and 5, making his PRV level "F." Defendant argues that these PRVs should not have been scored under MCL 777.50, which provides in relevant part:

> (1) In scoring prior record variables 1 to 5, do not use any conviction or juvenile adjudication that precedes a period of 10 or more years between the discharge date from a conviction or juvenile adjudication and the defendant's commission of the next offense resulting in a conviction or juvenile adjudication.

---

[3] A "Standard 4" brief refers to a brief filed on behalf of an indigent criminal defendant pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4.

(2) Apply subsection (1) by determining the time between the discharge date for the prior conviction or juvenile adjudication most recently preceding the commission date of the sentencing offense. If it is 10 or more years, do not use that prior conviction or juvenile adjudication and any earlier conviction or juvenile adjudication in scoring prior record variables. If it is less than 10 years, use that prior conviction or juvenile adjudication in scoring prior record variables and determine the time between the commission date of that prior conviction and the discharge date of the next earlier prior conviction or juvenile adjudication. If that period is 10 or more years, do not use that prior conviction or juvenile adjudication and any earlier conviction or juvenile adjudication in scoring prior record variables. If it is less than 10 years, use that prior conviction or juvenile adjudication in scoring prior record variables and repeat this determination for each remaining prior conviction or juvenile adjudication until a period of 10 or more years is found or no prior convictions or juvenile adjudications remain.

(3) If a discharge date is not available, add either the time defendant was sentenced to probation or the length of the minimum incarceration term to the date of the conviction and use that date as the discharge date.

MCL 777.50(4)(b) defines "discharge date" as "the date an individual is discharged from the jurisdiction of the court or the department of corrections after being convicted . . . ." Thus, the question is "whether, starting with the present offense, there was ever a gap of ten or more years between a discharge date and a subsequent commission date that would cut off the remainder of [a defendant's] prior convictions . . . ." *People v Billings*, 283 Mich App 538, 552; 770 NW2d 893 (2009).

Defendant maintains that his most recent conviction was for marijuana possession on May 3, 1994. The Presentence Investigation Report lists the discharge date for this conviction as "unknown." In such cases, defendant argues that MCL 777.50(3) compels the trial court to arrive at a discharge date by adding the sentence of probation or the minimum incarceration to the conviction date. Defendant contends that, because the trial court sentenced him to fines and costs for the marijuana possession conviction, his discharge date is the same as his conviction date, May 3, 1994. Consequently, he contends, the discharge date precedes the commission date of the armed robbery by more than 10 years and the court should not have scored defendant's marijuana-possession conviction or any convictions preceding it, and defendant's score for PRVs 1 through 5 should have been zero instead of 90, making his PRV level "A" instead of "F."

Defendant errs by assuming that the relevant discharge date is the date associated with his May 3, 1994 plea-based conviction for possessing contraband in prison, MCL 800.281(4), and that this date should have been considered to be the same as his conviction date. However, defendant committed this offense while serving a 20 to 30 year prison sentence for first-degree criminal sexual conduct, from which he was discharged on June 24, 2012. That discharge date did not precede a period of 10 or more years before the commission of the offense for which defendant was sentenced in this case. Accordingly, defendant's argument that the 1994 discharge date cuts off use of his prior convictions for calculating PRVs 1, 2, and 5 fails because the discharge date of June 24, 2012 was less than a year from the date he committed the sentencing offense. MCL 777.50(1). Simply put, the discharge dates for the crimes defendant

committed while in prison are properly considered to be June 24, 2012, as indeed the PSIR lists the discharge date for defendant's 1993 plea-based conviction for prisoner in possession of weapons, MCL 800.283(4), another of defendant's convictions that occurred while he was imprisoned. This analysis comports with the language of MCL 777.50(4)(b), as it was not until June 24, 2012 that defendant was discharged from the jurisdiction of the department of corrections.

This analysis is supported by the fact that defendant's logic would produce an absurd result. *Powell*, 280 Mich at 703 ("Where possible, statutes must be given a reasonable interpretation and be so construed as not to lead to absurd consequences."). The purpose of the sentencing guidelines is to facilitate proportionate sentences, i.e., to levy sentences that fit defendants' conduct in light of their criminal record. *People v Babcock*, 469 Mich 247, 262-263; 666 NW2d 231 (2003). Defendant's contention that a sentencing court should use a "discharge date" associated with offenses committed in prison, where defendant was not in fact discharged from the jurisdiction of the department of corrections, MCL 777.50(4)(b), because the discharge date of defendant's 1987 sentence had not yet come to pass, would reward defendant for continuing to commit crimes while incarcerated and result in a sentence disproportionate to defendant's criminal history, and thus inconsistent with the Legislature's intent to have sentences fit the crime and the criminal. *Id*. For these reasons, we find that the trial court did not err in calculating defendant's PRV score.

## V. OFFENSE VARIABLES

In a supplemental brief, defendant argues that he is entitled to a remand for consideration of his sentence in light of *Lockridge*, because he was assessed points for offense variables (OVs) based on facts not admitted by defendant or found by the jury. We agree.

In *Lockridge*, our Supreme Court held that in order to avoid any Sixth Amendment violations, Michigan's sentencing guidelines scheme was to be deemed advisory, instead of being mandatory. *Id*. at __ (slip op at 28). The concern is that when a judge makes findings of fact "beyond facts admitted by the defendant or found by the jury" in a sentencing proceeding that increases a defendant's minimum sentence, this runs afoul of a defendant's right to a jury trial. *Id*. at __ (slip op at 1). As a result, the guidelines no longer can be considered mandatory, but sentencing judges must consult the guidelines and " 'take them into account when sentencing.' " *Id*. at __ (slip op at 28), quoting *United States v Booker*, 543 US 220, 264; 125 S Ct 738; 160 L Ed 2d 621 (2005).

In determining whether there is any plain error under this new scheme, the first inquiry is whether the facts admitted by the defendant and the facts necessarily found by the jury "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced." *Id*. at __ (slip op at 32). If the answer is "yes," then a defendant cannot establish any plain error. *Id*. at __ (slip op at 32). If the answer is "no," then a remand to the trial court is required to allow it to determine whether, now aware of the advisory nature of the guidelines, if the court would have imposed a materially different sentence. *Id*. at __ (slip op at 34). If the court determines that it would have imposed a materially different sentence, then it shall order resentencing. *Id*. at __ (slip op at 34).

"[A]ll defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to remand to the trial court for further inquiry[,]" i.e., a "*Crosby*"[4] remand. *Lockridge*, slip op at 33.

Here, defendant was scored 10 points for OV 9 (number of victims), MCL 777.33, five points for OV 12 (number of contemporaneous criminal acts), MCL 777.38; and 10 points for OV 19 (interference with the administration of justice), MCL 777.44. Reducing any one of these scores to zero would alter defendant's minimum sentence range under the guidelines. MCL 777.21.

The trial court did not elaborate at the sentencing hearing on the facts upon which it based defendant's OV scores. However, with regard to OV 9, defendant was assessed 10 points, which is assessed when 2 to 9 victims were placed in danger of physical injury or death, or 4 to 19 victims were placed in danger of property loss. MCL 777.39(1)(c). Although the jury heard that defendant threatened two store employees with a pistol, the jury was only required to find that one victim was threatened with force or violence in order to convict him of armed robbery. See MCL 750.529; MCL 750.350. Therefore, the risk of injury, death, or property loss to more than one person was not a fact "necessarily found by the jury." *Lockridge*, at __ (slip op at 1). Further, both OV 12 and OV 19 relate to conduct outside the sentencing offense. See *People v McGraw*, 484 Mich 120, 125, 147; 771 NW2d 655 (2009). We therefore conclude that these scores were also not necessarily found by the jury. *Lockridge*, at __ (slip op at 1).

Defendant has made a threshold showing of plain error and a *Crosby* remand is appropriate. On remand, the trial court should determine whether it would have imposed a "materially different" sentence if it had been aware of the advisory nature of the guidelines. *Id*. at __ (slip op at 34).

Affirmed with regard to defendant's conviction and the scoring of PRVs. Remanded for consideration of his sentence in light of *Lockridge*. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Joel P. Hoekstra

---

4 *United States v Crosby*, 397 F3d 103 (CA 2, 2005).